[Civ. No. 5961.   First Appellate District, Division Two.—November 10, 1927.]

UNION TERMINAL WAREHOUSE CO. (a Corporation), Respondent, v. EDWARD I. ROBERTI et al., Appellants.

E. F. Gerecht for Appellants.

Le Roy M. Edwards and O. C. Sattinger for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants asking damages for the conversion of twenty-six bales of cotton. The defendants appeared and answered and the action was tried in the trial court before the court sitting without a jury. Findings in favor of the plaintiff were filed and a judgment was entered thereon in its favor. From that judgment the defendants have appealed under section 953a of the Code of Civil Procedure.

The plaintiff is a corporation conducting a warehouse at San Pedro. During the latter part of 1922 it had on storage several thousand bales of cotton. The cotton was stored one bale high in tiers and rows in a yard adjacent to a cotton compress. The yard was not fenced and on one side a highway was not far removed. The plaintiff had a watchman on duty to watch the yard. Roberti Bros., the defendants, were engaged in the manufacture of mattresses and had a place of business in Los Angeles. During the months of November and December, 1922, a negro, E. L. McAllister, commenced a series of thefts. Later, after certain investigations had been made, he was arrested for stealing twenty-six bales of the plaintiff's cotton. He pleaded guilty to a charge of grand larceny and was sent to Requa. While there his deposition was taken by the plaintiff. At times he hesitated about answering questions, but after long conferences with the plaintiff's attorney he consented to proceed. In the deposition he testified that at times he drove a Ford truck and at times he drove a Republic truck; that in the night-time he would time the plaintiff's watchman and when the watchman would be at a distant point McAllister would proceed to take a load of cotton, four or eight bales at a time, and then drive to the neighborhood of the defendant's place of business. At that point he would remain until the defendants opened their doors and then he would enter, negotiate his sale, weigh the load, get a receiving slip and immediately thereafter a check in payment for the load. In this manner he took from the plaintiff twenty-six or twenty-seven bales. In this manner

he sold and delivered to the defendants all except four bales which he sold to another house. He testified that in the beginning he informed the defendants that he was a dealer in cotton at Imperial. He gave the defendants his name as E. L. Richardson. Thereafter all business was transacted with the defendants under that assumed name. He testified that each bale that he took had a tag attached to it; that he tore off one tag and read what was on it, but that he did not tear off any other tags. He testified that the defendants made no request of him for any personal identification but paid him twenty-two or twenty-three cents a pound for the cotton. There was evidence given by other witnesses that the market price of cotton at that time was as high as twenty-eight cents. On the trial of the case the plaintiff introduced in evidence the receiving slips and paid checks each and all confirming the testimony of McAllister. The plaintiff introduced evidence from its own records as to its weights of the twenty-six bales of cotton. The receiving slips showed the weights as weighed by the defendants.

There was testimony to the effect that cotton produced in dry climates and brought to the coast and stored in the coast climate would take on weight. The evidence showed a variance in weights so that the weights of the bales as shown by the records of the plaintiff did not tally with the weights of the bales as shown by the records of the defendants, but there was no evidence introduced in the record from which this court can identify any particular bale and in that manner compare the weights.

During the period that the thefts were being committed the plaintiff commenced to surmise that some of the cotton was being stolen. It thereupon caused a check to be taken, thus verifying its suspicions. Later it employed detectives, who proceeded to investigate the case. When the investigation had been completed it was ascertained what bales had been stolen and what owners had deposited in the warehouse each of the stolen bales. Before the action was commenced the plaintiff paid the detectives and paid each owner the market price of the cotton stolen. After all of the proof was adduced the trial court awarded the plaintiff judgment as for twenty-two bales and not twenty-six bales. This was done because McAllister, whether truly or falsely, testified

that only twenty-two bales, so stolen from the plaintiff, were by him sold to the defendants.

■ The first point made by the defendants is that there was no evidence before the trial court that in any way sustains the judgment of that court in holding that the defendants had converted twenty-two bales of cotton belonging to the plaintiff. The point is without merit. E. L. McAllister fully testified to all of the facts. Even though, as contended by the defendants, his testimony contained contradictions or uncertainties, or came from one convicted of a felony and then serving his time, those infirmities were addressed to the trial court. ■ The trial court having made its finding against the defendants this court is not at liberty to disregard the finding. ■ That finding is not broken down because one of plaintiff's officers testified that the cotton stolen from it was "long staple," whereas the defendants offered evidence that the cotton which they purchased from McAllister was not "long staple." The fact that the weights did not agree is another feature that is not conclusive against the plaintiff. We may assume that all of these matters were fully argued to the trial court and were duly considered by it. Evidently the trial court did not consider them as being persuasive. We do not mean to state that we disagree with the trial court. However, we are clearly of the opinion that it may not be said that the trial court abused its discretion.

■ The defendants cite and rely on section 3543 of the Civil Code. This section has no application to the facts. The evidence does not disclose that the plaintiff was negligent. The evidence therefore does not justify a ruling against the plaintiff based on its alleged negligence.

■ The defendants earnestly contend that there is no evidence identifying the twenty-two bales. There is no evidence in the nature of marks, brands, etc., but, as recited above, McAllister testified that he took twenty-two bales from the possession of the plaintiff and delivered them into the possession of the defendants. This was certainly pointed identification.

■ In making up its judgment the trial court awarded judgment in favor of the plaintiff for 10,630 pounds, that is an average of 483 pounds per bale. The receiving slips show the delivery to the defendants by McAllister of ten

bales cotton, low-grade lint, and again twelve bales linters. The plaintiff's testimony was that it did not have any linters in storage. The slips show five loads of four, four, four, eight, and three bales respectively—twenty-three bales in all—which are not marked linters but are marked staple, long staple, etc. The total weight of the twenty-three bales was 12,363 pounds, that is, 560 pounds per bale. In whatever way the trial court made up its figures, it is manifest that they were favorable to the defendants rather than to the plaintiff. As to the price per pound, the trial court followed the testimony of Mr. Munson, one of the officers of the plaintiff and the only witness who gave testimony on market values.

We find no error in the record. The judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.