## Hall's Adm'r et al. v. Hall.

March 14, 1941.

Joseph D. Harkins and C. B. Wheeler for appellants.

J. W. Howard for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Reference is made to Hall v. Hall, 261 Ky. 685, 88 S. W. (2d) 690, a former appeal, for the facts leading up to a decision in the case then and now before us. While the issues raised on that appeal are here presented, it appears that all questions were passed, save the one specifically decided. It will be sufficient for us to say that the contract between the relict of W. R. Hall and his heirs at law, entered into shortly after his death, was set aside on grounds of unfair advantage and lack of consideration.

The reversing mandate went back to the circuit court in January, 1936. The matter in litigation between the widow and children had started in a partition suit, Mrs. Hall's contention being set out in her intervening petition, which, besides charging the collusive and unwarranted activities on the part of the heirs, set out the property left by decedent, showing her interests both as to realty and personalty. On return her intervening petition was amended, amplifying charges, setting out specifically the properties, in some of which real property, she owned a joint interest, in other dower rights, and also its disposition and use, and of personal property by the heirs following the illegal contract.

By reason of lapse of time and certain transactions on the part of the heirs, the intervener was compelled to amend in several respects, seeking recovery of values in some cases rather than properties in kind; alleging the squandering and disposition of assets, unnecessary expenses and wrongful uses and wasting of properties. We shall give no more than this outline of the mass of

pleadings, since the controversy involves conclusions rather than pleadings or procedure.

The matter was referred to a special commissioner, who heard and considered evidence which makes up more than 400 pages, not including such as was taken on first trial, in a commendable painstaking manner, returned a lengthy report in which he detailed facts and made recommendations to the court. To his report all parties, save and except two of the heirs, filed timely exceptions. For the sake of brevity we shall deal only with such matters raised by exceptions, and later adjudged, as are subject to complaint in briefs of parties. Mrs. Hall is in court on her cross-appeal.

The chancellor rendered a separate judgment in respect of the interests of the parties in the real estate, including allotment of dower; this judgment as a whole is unattacked. There were ten sections comprising personal judgments. The relationship of parties is set out in our former opinion, wherein it appears that the heirs were the children of W. R. Hall and his first wife Susana Hall, and the four grandchildren of Alice Hatfield, a deceased daughter.

We shall take up first that portion of the brief which deals in general with what are denominated "personal judgments," or the personal property judgment as a whole. This objection arises upon the fact that notwithstanding Marion Hall, a son, was administrator, and had made a precipitate partial distribution following the contract mentioned, and had executed surety bond, the court in rendering personal judgments did not adjudge against the administrator in his fiducial capacity, but only as one of the heirs, and against him and the other heirs, in gross without regard to respective properties received by the heirs.

It is argued that the judgment should have been against the administrator, since he was the only one who could distribute, and would be in position to require obligation and surety from distributees, if occasion arose to a refund of overpayment or contributions to meet debts and demands, or require contribution in certain cases, whether surety be given or not. Kentucky Statutes, Section 3877. Why he overlooked this matter is not shown. It is also argued that no statute impresses a lien upon any portion of a decedent's estate received

by a distributee, or upon any overpayment; likewise the effect of an attachment adjudged in favor of appellee for the amount of the judgment, and the effect of a lis pendens, are discussed, but not in such a way as to authorize a disturbance. There was also a lien against some non-transferred stock in the name of decedent, and upon the interest of the heirs in royalties distributable to the heirs, to secure payment of the sums adjudged in favor of Mrs. Hall. Here there was appropriate action on the part of the widow, and in cases such as the one developed equity impresses the lien.

It is further argued that the judgments, joint and several, cannot be sustained on the ground of fraud or conspiracy, "plead and relied on in the action" in which the first judgment was rendered, and "reiterated and replead in subsequent pleadings." On this point we are not furnished with helpful authorities.

The chancellor in the first case had rendered joint and several judgment against all the heirs, cancelling the original contract directing an accounting, which could not be had in kind, since in many instances later noted, the distributees had disposed of their disbursed shares in personal property and choses. In this situation the widow was not to be put to the disadvantage of searching out vendees or purchasers, make them parties, and seek to recover specific items. She was compelled to elect to take agreed, estimated or proven values.

The contention is that recovery against the heirs should have been limited in proportion to properties received, or the amount overpaid, as if under mistake. Kentucky Statutes, Section 3877; Johnson v. Dodd's Adm'rs, 238 Ky. 194, 37 S. W. (2d) 26, 77 A. L. R. 975, are not applicable, though it may be that the appellee might have sought and had been allowed such relief. Here the cause of action was based on grounds of consummation of a plan to deprive the widow of her lawful interest in her husband's property. All the heirs, whether shown by proof to have been original parties to the unholy enterprise, were recipients of the fruits, and upon being handed their shares, in whole or in part, began and continued the use, even to the extent of preparing and executing inter partes deeds. We need not repeat the various steps, such as cutting and disposing of timber, contracting for valuable rights of way, hypothe-

cating securities; in one instance the Jack's Creek stock was used as collateral by each recipient, shortly after receipt; a striking coincidence.

As to the joint and several liabilities of the heirs, as determined by the court, there can be little doubt. This court and courts of other jurisdictions have sanctioned and upheld family arrangements looking to the settlement of property rights. Such, where fairly conceived and carried out, not only save expenses of formal litigation but tend to preserve peace and harmony. On the other hand the courts have never hesitated to upset such arrangements where fraud, undue influence or overreaching has been practiced. This rule has found easier application, where there exists a confidential relation between the parties in respect to property rights. In these cases equity should and does relieve the party who has yielded to coercive influence. Applying the doctrine, it may be doubted if the heirs have placed themselves so as to benefit on equitable principles.

The case was begun, practiced and decided on the idea that the heirs had agreed to so distribute the estate as to allot to the widow much less than her dower rights, and to give to her what is called a "child's part," in the personal property. Regardless, however, of the conspiracy charge, it is not difficult to read from the record that the plan, whether conceived in iniquity, culminated in a distribution manifesting fraud.

If there was conspiracy, it was of a civil nature, and such as would make participants jointly and severally liable. It is well settled that where two or more persons enter into an agreement, tainted with conspiracy, any act done by either or any one in furtherance of the design becomes the act of all, and each participant is responsible for the result. Vol. 15, C. J. S., Conspiracy, Section 18, p. 1028, and cases cited. The same text lays down the rule that it is not necessary, in order to fix joint or several liability, that all should have entered at the inception. Those who enter later and enjoy the benefits become liable.

The same general rule applies in a case of fraud and deceit. 24 Am. Jur. p. 70. Where fraud and deceit is the basis of the action it is not essential that pre-existing common design be shown, nor even a common interest in the fruits of the fraud. See cases cited

under above citation. And in such cases, as where one had parted with property in fraud of his rights, and without commensurate consideration, the damages following cannot be less than the value of the property that has passed by reason of the illegal transaction. The principles enunciated are borne out by our cases and many from other jurisdictions. McGuffin v. Smith, 215 Ky. 606, 286 S. W. 884; Kentucky E. D. Company's Receiver v. Head, 252 Ky. 656, 68 S. W. (2d) 1, and cases cited. Mrs. Hall, in her pleadings, met all essential requirements, even in her efforts to restore status quo. Her proof was sufficient on the charges, as is evidenced by former opinion, which is the law of the case on this point.

That their respective and joint liabilities were as fixed by the chancellor, and the widow entitled to the relief granted, both in form and substance, there can be little doubt.

In order not to unduly lengthen the opinion, we take up the several specific contentions raised on original and cross-appeal, as affecting some contentions, and point out that the court in entering the personal judgments wrote specifically:

(1) "All questions of priority of claims and liens set up in the pleadings between Alice Hall and persons other than the heirs, are specifically reserved for further adjudication."

(2) The court ruled that all "exceptions to the respective parties thereto, insofar as may be contrary to the facts and findings hereinbefore set out, shall be and the some are overruled."

(3) "That all parties herein are directed to prepare these consolidated actions for final and complete trial and determination at the next term of this court upon all issues not adjudicated, to which these actions are continued."

(4) "The court does not intend to and does not by the foregoing judgment adjudicate the rights of the heirs at law as between themselves in making contributions to and satisfying the judgment in favor of Alice Hall against them, but all such questions and equities as between them, as well as other

questions not expressly decided, are reserved for further adjudication.''

Section 2 or the personal judgment fixed the interests of the parties in royalties from the mineral lease of 223 acres of land, jointly owned by decedent, the widow, and some of the heirs, to Jack's Creek Company. The chancellor found, omitting extended decimals, that Connie Johnson owned 4.9 per cent of the royalties in the acreage; Lule Jones, 4.5 per cent; the widow 2.8 per cent, in their own rights, and the estate the balance of 87.75, of which the widow's one-third interest for life was 29.25 per cent, with the remainder in the heirs.

This 233 acres was made up of three parcels, known in the record as the Susana Hall, Alice Hatfield and Marion Hall tracts. The complaint here is that the chancellor did not adjudge to Susan Martin any royalty portion (save in the remainder), notwithstanding she claimed to be the owner of 1/20 of the minerals, the same interest as Connie Johnson. This contention arises from the claim that a deed executed by Susan and her husband, in March, 1928, to W. R. and Alice Hall, did not embrace any of the minerals in the Alice Hatfield tract (135 acres), and that W. R. Hall during his lifetime recognized this claim; further that Mrs. Martin was entitled to 4.88 of this royalty, relying on the statement of Mr. Lindsay, who examined the deed and said that it did not cover the Hatfield, but only the Susana Hall, tract. Further, that Mrs. Martin asserted that she did not at any time convey to her grandfather any of the oil and gas in the Hatfield tract. The question of Susan Martin's interest depended not on what these witnesses thought about it, but upon construction of deeds exhibited.

The deed from Mrs. Martin and her husband recited an exchange of land between the parties; described a tract in Floyd County, which had been theretofore, on May 31, 1911, conveyed by Susana and W. R. Hall to Susan Martin, as containing 250 acres more or less. After describing it, this language is used:

''and the minerals and mineral products that is unsold or undeeded to Alice Hatfield and Marion Hall land which is not sold to the Northern Coal and Coke Company, so as to include Susan Martin's interest in said boundary.''

It is observed that the claim is that the Marion Hall, Susana Hall and Alice Hatfield tracts comprised 223 acres, and it is apparent from reading this deed, admittedly unskillfully drawn, it was the intention of the parties that the Martins were intending to convey all their title and interest which might be included in the named boundaries. If it has bearing it may be noted that the deed from Hall and wife (Susana) to Alice Hatfield, May 31, 1911, excluded the minerals. If we are correct in the assumption that the Hatfield tract is the same one discussed in briefs, then the court was doubly correct in holding that the minerals under the Hatfield tract vested as adjudged. Further, as we view the pleadings, the intervener alleged that the Martins had conveyed their mineral interest in the Hatfield tract, and we find nothing in the record controverting the allegation.

Complaint is made of the judgment relating to the division of the Jack's Creek stock, because the intervener did not elect to bring in a purchaser of 22 shares which Marion had sold. There were 93 shares of this stock. Marion as administrator, or as an heir, had sold 22 shares to one Lindsay. He had received 18 shares in the distribution. It does appear that in the unauthorized distribution, Marion had gained possession of 22 shares, which he claimed he had sold in good faith, and that Lindsay was a bona fide purchaser. Disposition of the proceeds is not shown, except that the widow did not share.

We assume from the record that the Lindsay stock had been transferred; the court found that there were 71 shares not transferred on the books of the company, standing in the name of decedent, and of these he directed that 46½ shares be issued to Mrs. Hall. Counsel contends that to give the widow 46½ shares, works a preference as against the rights of the heirs; we cannot see the matter in this light, since the law gave to Mrs. Hall 46½ shares, and it was through the unjustified acts of the heirs that she was deprived of her rights.

It is urgently contended that it was the intervener's duty to bring Lindsay in for the purpose of having the "Lindsay stock" contribute, or to adjudge that Marion should contribute to the extent of the proceeds of the sale to Lindsay. Why this was not done is not dis-

cernible, but as we read the record the judgment will work no hardship, either on the heirs or those to whom the stock was hypothecated; the latter are not here with complaint.

It is suggested by counsel that "even the intervener could bring in the Marion Hall-Lindsay stock, or the court on its own volition require the stock to be brought in for marshalling." This is true, since the judgment specifically reserves for future adjudication the matter of equitable contribution, as well as all claims of liens and privities, except as between the widow and the heirs. The complaint might well be answered by suggesting that the heirs, faced with a possibility of contribution, might have brought in the Lindsay stock by appropriate pleading.

The next complaint is that the chancellor erroneously allowed interest on the balance of the statutory allowance of $250, adjudged to the widow from May 16, 1934. That he adjudged interest on $3050, the value of the balance due on the $10,000 of government bonds, from May 16, 1932, and likewise interest from the same date on the sum of $2,000 as to the widow's interest in the value of the Bank of Josephine stock.

The argument is that since under the law title to personal property does not vest at once upon death of the owner, but in the personal representative, such interest should not accrue until settlement could have been compelled (or until two years after qualification, Kentucky Statutes, Section 3859, surplus assets). The date, May 16, 1932, was apparently the date upon which Marion Hall qualified as personal representative. Ordinarily the contention of appellants would be sound, but here the proof shows that shortly after May 16, 1932, the administrator took possession of the personal property under the contract and did distribute it, and the various heirs accepted and used the property.

Mrs. Hall was legally entitled to her share of the stocks, bonds and other choses at that time, in kind. By failure to turn over to her the portion to which she was entitled, she lost dividends and royalties, in some cases appreciable, and which the chancellor did not take into account. She may not have been entitled to demand her share until the expiration of the lawful period. Neither were the heirs. So, by the use of the property and

failure so far to account for accruals, it does not appear that complainants have been prejudiced.

It is further complained that the chancellor erroneously adjudicated the widow's rights in the dividends declared on the Jack's Creek stock. The same argument is made here as was made, supra, with reference to the extent of the liability of each of the heirs individually, which we take to imply that the Lindsay stock was not considered in fixing the liability, and in regard to the Martin interest, and interest charges which the judgment limited to the dates of receipts thereof by the heirs. What we have said in relation to the allotment of royalty rights and the Jack's Creek and bank stock, applies here.

It is also urged that there were impounded dividends on the 71 shares of Jack's Creek stock, from September 15, 1935, to October 1937; the dividends upon the Lindsay stock were not impounded. Since Lindsay was not a party to the suit, and it was claimed by parties that he was a bona fide purchaser, the court was correct in not directing such dividend to be impounded. What we have said, supra, on this subject need not be repeated. Counsel complains (when discussing interest allowance) that the court should not have impounded, but ordered the funds paid directly to the widow, thus warding off interest charges.

We note from the record that on two occasions the widow moved the court to pay the dividends to her, which the court would no doubt have ordered in the absence of objections on the part of the appellees. Later the court, over their objections, directed payment of a part of accumulated royalties and dividends.

It is contended that of the royalties accruing after the death of W. R. Hall, and which amounted to $1,500.38 (admittedly correct) were not properly adjusted. This argument is again based on the ground that the widow was entitled only to 27.8 per cent of the royalties, instead of 29.26, as her dower interest, and that her total interest, both dower and individual, should be 30.67, instead of 32.06. The argument takes us back directly to the question as to whether or not the widow's interest, individual and dower, or the latter at least, should have been reduced by the interest feebly claimed by Susan Martin, and repetition is unnec-

essary; the contention as to interest payments is the same as before noted.

It is perhaps true that the chancellor overlooked a payment to the widow of royalties to the amount of $36.14, which ought to be adjusted in further proceedings. The personal judgment under this clause was for $610 on account of royalties paid the heirs, and interest. The other portion simply directed distribution of the funds in custody.

The court allowed Mrs. Hall rents on the real estate which the heirs had in use and enjoyment following the deeds which were later cancelled, $650 per year or a total of $3,250, with interest. Counsel suggests in brief that the values fixed by the court were fair, but that it was grossly unjust to adjudge recovery as against all the heirs, instead of individual recoveries. The argument is that two of the heirs had possession of lands where the rental values ranged from $25 to $100 per year. Some of the others, two perhaps, had possession of lands where the rental value was $500 per year. In other words, the rental value of the property in the hands of two of the heirs aggregated $1,000, and the other two the remainder of the aggregate. The commissioner had reported that the reasonable rental value of the real estate owned by decedent was $1,200 per year; Mrs. Hall's interest in the Boyd County land $250 per year. Mrs. Hall would be entitled to one-third of the $1,200 plus the $250, making $650; such was the finding of the commissioner and adopted by the chancellor. We have discussed the matter of joint judgment against all the heirs, supra, and if we are correct in our conclusions, then there is no reason why this portion of the judgment should not stand.

The matter of interest on this item is also criticized. But since the heirs, as shown by proof, held possession for five years, about which there is no question, there is no good reason why interest should not have been adjudged. This interest was calculated from 1932, to date of judgment clearing Mrs. Hall's title September, 1937, when commissioners were appointed to make partition. Their report was made and approved May, 1938, and later Mrs. Hall regained possession. Insofar as the complaint is made here, it appears from the record that the heirs may have received an extra year's

rental. Also the proof shows that on some of the property monthly rentals were paid, upon which the court might have thus calculated interest.

The commissioner reported, and the court found, that there was cash on hand for distribution after paying certain claims, $10,546.49; the widow was entitled to $5,273.24. She had received certain funds, which after deductions left due $5,236.24, for which judgment was given with interest from May 2, 1932. The argument here is to the effect that since the record shows by way of administrator's settlement, he paid out to the widow and heirs, and in costs, $4,409.61, leaving cash on hand to be distributed, $6,136.88, which would leave the widow's half only $3,068.44, judgment for this amount should have been given against the administrator, with interest from May 16, 1934, instead of May, 1932. There may have appeared more reason in this contention if there had been a settlement actually made wherein the widow received her one-half, but under the contract the administrator undertook distribution as soon as the contract was made, overlooking Mrs. Hall's one-half, to which she was justly entitled. The court found from the proof that these assets had "been used or retained by the heirs of W. K. Hall."

It is complained that the court overlooked an item of $409.11, which should have been charged to the widow, paid to her in May, 1932. Neither the commissioner's report nor the judgment specifically mention this sum as having been charged to the widow. However, it appears from the exceptions filed by Mrs. Hall that this item, and the $36 mentioned, supra, were deducted in making her the statutory allowance of $750, by allowing her a balance of $250. We are unable to tell exactly from the record whether or not these items were actually charged to the widow. If they were not, then there is merely a misprision, which may be later adjusted.

A cross-appeal has been granted to the appellee, but the grounds relied upon, in all instances, are not of sufficient merit to justify reversal on cross-appeal; one arises on the commissioner's report relating to a right of way sold by the heirs after their possession of the realty.

The commissioner reported that following the

agreement, supra, the heirs sold to Floyd County a highway right of way for $5,000. He remarked that the date of the deed was not established, "nor is there any evidence showing the age of Alice Hall," and under these circumstances he declined to determine the widow's rights. Mrs. Hall set up in her exceptions the fact that the proof showed that the right of way had been sold for $5,000, and that a deed was made November 9, 1932, and had been recorded. It was also stated that the widow was fifty-six years of age when the deed was executed.

In the judgment rendered by the court no mention is made of this matter, and it is contended that by the court's ruling on the exceptions Mrs. Hall was shut off on this item. This ruling was as stated in (2) supra, which we do not construe to end the right of way matter, since on the same day the real estate and personal judgments were rendered, the court ordered as set out in (3), supra.

We may assume that the order included the item mentioned, and that the chancellor desired proof on the point other than that stated in exceptions. It is not clear from the record that the item, "Cash collected by him" (the administrator) included the $5,000. However, without now holding to that effect, we can see no reason why the widow is not entitled to an interest in the proceeds of this sale to be determined according to applicable law.

What is said of the above item should apply to the matter of sale of timber from the various lands, proof on which counsel for appellee says "has not been fully developed," and as to alleged sales of rights of way for power and pipe line rights of way, and notes alleged to be owing the estate on loans to the heirs. These matters are still in the hands of the court, and may be later determined.

Appellee moved to dismiss the appeal in respect to certain items included in the personal judgment; this motion was passed to merits. Our conclusions on merits obviate the necessity of passing on the motion. However, it lacks merit, since the questions raised only relate to matters specifically reserved by the court.

Judgments affirmed on original and cross-appeal.