[S. F. No. 20331.   In Bank.   Feb. 19, 1960.]

PAUL DE VRIES, Respondent, v. JAMES J. BRUMBACK, Appellant.

Leo R. Friedman for Appellant.

Lloyd M. Tweedt, Robert H. Thede and Derby, Cook, Quinby & Tweedt for Respondent.

SPENCE, J.—On February 18, 1955, plaintiff's assignor, a San Francisco jewelry firm, was robbed of certain money, precious stones and jewelry. Thereafter, in this action for conversion, plaintiff recovered judgment against defendant James J. Brumback for $21,947.13, the value of the property that was taken in the robbery and was not subsequently recovered. Defendant Brumback appeals on the judgment roll, contending that the findings do not support the judgment.

The pertinent findings of fact are: "V. On the 18th day of February, 1955, Paul de Vries, Inc., a jewelry firm, owned and had in its possession at its offices and salesrooms in San Francisco, California, money in the amount of $195.00, and certain stock in trade consisting of jewelry, diamonds and other precious stones; said stock in trade then and there had a reasonable value of about $112,000.00.

"VI. On February 18, 1955, defendant Frank Mendes and others armed with dangerous weapons robbed said Paul de Vries, Inc. and certain persons employed therein, of money and said entire stock in trade; that prior to said date, defendant Frank Mendes, one Steve Sorrentino and others conspired and agreed with one Edward Bigarani that said Frank Mendes, Steve Sorrentino and others should rob said Paul de Vries, Inc. and that said Edward Bigarani should receive the stolen property from said robbers; that said robbery was committed pursuant to said conspiracy and the robbers delivered the *greater part* of said stolen property to said Edward Bigarani shortly after the robbery had been committed; that

*defendant James J. Brumback was not a party to and did not participate in said conspiracy prior to or during said robbery.* (Emphasis added.)

"VII. On February 18, 1955, within a few hours after said robbery, defendant James J. Brumback proceeded to the hotel room of said Edward Bigarani in San Francisco, California, and then and there saw the *greater part of said stolen property* in the presence of said Edward Bigarani and defendant Frank Mendes; that defendant James J. Brumback was then and there made aware of said conspiracy insofar as it involved said Mendes as robber and said Bigarani as receiver; *that with said knowledge, defendant James J. Brumback joined, ratified and participated in said conspiracy;* that the *general purpose of said conspirators was to convert all of the property stolen in said robbery to their own use and benefit and said conspiracy and its purpose had not terminated at the time said James J. Brumback joined, ratified and participated in said conspiracy. Said defendant James J. Brumback thereupon took the greater part of said stolen property into his possession and custody.* (Emphasis added.)

"VIII. *The greater part of the stolen property was recovered from said conspirators.* Money in the amount of $175.00 taken in said robbery was not recovered; jewelry, diamonds and other precious stones, as itemized on plaintiff's Exhibit Number 3 in evidence herein, taken in said robbery, were not recovered; the value of said unrecovered items set forth in said exhibit was in the sum of $21,772.13 at the time of said robbery; that by reason of the premises plaintiff's assignor has been damaged in the total sum of $21,947.13." (Emphasis added.)

Upon these findings, appellant contends that he was improperly held liable for property over which he at no time exercised any dominion and which was never in his possession. He argues that he was not a member of the prerobbery conspiracy and that conspiracy terminated when, after the robbery, the "greater part of the stolen goods" was delivered to Bigarani; that thereafter, when appellant received part of the stolen property, a new conversion was committed, and his liability cannot extend beyond the amount of goods he received; and since all such stolen goods that he received were recovered, no damages could properly be assessed against him by reason of this second conversion.

But appellant misconstrues the import of the findings and the premise of his liability for damages in a civil action in-

volving a conspiracy. The basis of the damage claim was the alleged conversion of goods taken in a robbery. ▆ Conversion has been defined as "an act of wilful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." (Prosser on Torts, 2d ed., p. 66; see 48 Cal.Jur.2d, Trover and Conversion, § 2, p. 536; *George* v. *Bekins Van & Storage Co.,* 33 Cal.2d 834, 837 [205 P.2d 1037]; *Gruber* v. *Pacific States Sav. & Loan Co.,* 13 Cal.2d 144, 148 [88 P.2d 137].) ▆ It is a continuing tort—as long as the person entitled to the use and possession of his property is deprived thereof. Contrary to appellant's argument, it does not necessarily end when the original wrongdoer transfers physical possession to another. ▆ Likewise, a conspiracy to convert is a continuing concert of action lasting so long as the agreement to exercise dominion over another's property continues. The time when the common design of the conspirators is fully accomplished depends on the facts and circumstances of each case, and on the nature and purpose of the conspiracy—all matters for the determination of the trier of fact. (11 Cal. Jur.2d, Conspiracy, § 4, pp. 222-224.)

The case was tried upon the theory of conspiracy and the trial court expressly found that the general purpose of the conspirators was to "convert *all* of the stolen property in said robbery to their own use and benefit and said conspiracy and its purpose had *not* terminated at the time said James J. Brumback joined, ratified and participated in said conspiracy." (Emphasis added.) True, the trial court found that Brumback was not a party to the conspiracy prior to or during the robbery, but that the conspiracy did not then terminate and Brumback within a few hours after the robbery joined the preexisting conspiracy. ▆ Apparently, disposition of the stolen property was a primary feature of the conspiracy, and that had not been accomplished when Brumback joined it and thereafter aided in such disposition. (See *People* v. *Sorrentino,* 146 Cal.App.2d 149, 161 [303 P.2d 859].) As to Brumback's active participation therein, the court found that he "took the greater part of said stolen property into his possession and custody." Such overt act was clearly in furtherance of the general plan of the conspirators to exercise dominion over all the property as against the owner and to convert it to "their own use and benefit."

▆ As above noted, this appeal is one upon the judgment

roll alone, and the question of the sufficiency of the evidence to support the findings is not open. (*White* v. *Jones,* 136 Cal.App.2d 567, 569 [288 P.2d 913].) ▮ It therefore must be assumed that there was ample evidence to support the trial court's finding of a continuing conspiracy to convert and dispose of the stolen property, and that Brumback joined and actively participated in that existing conspiracy before its termination and with full knowledge of its scope and design. (See *People* v. *Brumback,* 152 Cal.App.2d 386, 391 [314 P.2d 98].)

▮ It is the settled rule that "to render a person civilly liable for injuries resulting from a conspiracy of which he was a member, it is not necessary that he should have joined the conspiracy at the time of its inception; every one who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance of it." (15 C.J.S. Conspiracy, § 19, p. 1030; *Peterson* v. *Cruickshank,* 144 Cal.App.2d 148, 165 [300 P.2d 915]; *Franck* v. *Moran,* 36 Cal.App. 32, 39 [171 P. 841].)

▮ Having been found to have joined and actively participated in the continuing conspiracy to convert, appellant became liable for the previous acts of his coconspirators under the rules relating to civil liability, and the fact that some of the missing goods may never have come into his possession would not absolve him from liability. (*Smith* v. *Blodget,* 187 Cal. 235, 242 [201 P. 584]; *Revert* v. *Hesse,* 184 Cal. 295, 301 [193 P. 943]; *Lomita Land & Water Co.* v. *Robinson,* 154 Cal. 36, 48 [97 P. 10, 18 L.R.A. N.S. 1106]; *Peterson* v. *Cruickshank, supra,* 144 Cal.App.2d 148, 168; *State* v. *Day,* 76 Cal.App.2d 536, 551 [173 P.2d 399]; *Franck* v. *Moran, supra,* 36 Cal.App. 32, 39; for other jurisdictions, see: *Ellis* v. *Colorado Nat. Bank,* 84 Colo. 266 [269 P. 997, 999]; *Western Homes, Inc.* v. *District Court,* 133 Colo. 304 [296 P.2d 460, 464]; *Peoples Loan Co.* v. *Allen,* 199 Ga. 537 [34 S.E.2d 811, 824]; *Baker* v. *State Bank of Akron,* 112 Ind.App. 612 [44 N.E.2d 257, 260]; *Hutson* v. *Imperial Royalties Co.,* 135 Kan. 718 [13 P.2d 298, 302]; *Hall's Adm'r.* v. *Hall,* 285 Ky. 730 [149 S.W.2d 24, 28]; *Rosco Trading Co.* v. *Goldenberg* [N.Y.], 182 N.Y.S. 711, 714; *Muse* v. *Morrison,* 234 N.C. 195 [66 S.E.2d 783, 785]; *F. R. Patch Mfg. Co.* v. *Protection Lodge, No. 215, I.A.M.,* 77 Vt. 294 [60 A. 74, 80, 107 Am.St.Rep. 765]; *Eyak River Packing Co.* v. *Huglen,* 143 Wash. 229 [255 P. 123, 126]; *Lyle* v. *Haskins,* 24 Wn.2d 883 [168 P.2d 797, 807]; *Lesnik* v. *Public Industrial Corp.,*

144 F.2d 968, 973; *United States* ex rel. *Marcus* v. *Hess*, 41 F.Supp. 197, 218.)

Cases cited by appellant are not in point. In *Union Terminal W. Co.* v. *Roberti*, 86 Cal.App. 636 [261 P. 324], defendants were held liable only for conversion of that part of stolen goods which they bought from a thief, but no question of conspiracy between the thief and defendants was raised. *Rozenberg* v. *Sund*, 81 Ga.App. 856 [60 S.E.2d 390], and *Wilson Cypress Co.* v. *Logan*, 120 Fla. 124 [162 So. 489], concerned purchasers in good faith of stolen property. *People* v. *Viets*, 79 Cal.App. 576 [250 P. 588], and *Garcia* v. *People*, 88 Colo. 267 [295 P. 491], are criminal cases and are therefore not in point.

Appellant argues that his civil liability for the conversion of goods pursuant to a conspiracy is governed by *People* v. *Weiss*, 50 Cal.2d 535 [327 P.2d 527]. It was there held that a person who joins a conspiracy after its formation may not be held ''substantively liable'' in a criminal action for the unlawful acts of his fellow conspirators committed prior to his entry into the conspiracy. While the Weiss case at page 566 disapproved implications in several criminal cases, including *People* v. *Brumback, supra,* 152 Cal.App.2d 386, 391-392, ''that a defendant could be held retroactively liable for . . . a substantive offense [committed by conspirators before he joined the conspiracy],'' it did not purport to discuss the law governing a defendant's civil liability for the prior acts of his fellow conspirators in furtherance of the common design. (See Code Civ. Proc., § 32.) Accordingly, appellant unavailingly cites the Weiss case in support of his claim that he cannot be held civilly liable as a joint tortfeasor for all of the unrecovered property but only for such specific items as may have come into his actual possession.

There is a clear distinction in the law of conspiracy as applied to criminal as differentiated from civil cases. (*Cf. State* v. *Duncan*, 64 Mo. 262, 266, cited in *People* v. *Weiss, supra,* 50 Cal.2d 535, in footnote at page 565, and *Kennish* v. *Safford*, 193 Mo.App. 362 [184 S.W. 923, 926-927].) The gist of the crime of conspiracy is the *agreement* to commit the unlawful act (*People* v. *Corica*, 55 Cal.App.2d 130, 134-135 [130 P.2d 164]; 11 Cal.Jur.2d, Conspiracy, § 11, p. 231), while the gist of the tort is the *damage* resulting to the plaintiff from an overt act or acts done pursuant to the common design. (*Mox Incorporated* v. *Woods*, 202 Cal. 675, 677 [262 P. 302]; *Herron* v. *Hughes*, 25 Cal. 555, 560; *James* v. *Herbert*,

149 Cal.App.2d 741, 746 [309 P.2d 91]; *Schaefer* v. *Berinstein*, 140 Cal.App.2d 278, 293 [295 P.2d 113]; 11 Cal.Jur.2d Conspiracy, § 47, pp. 272-273.) ▆▆▆ In tort "the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." (*Mox Incorporated* v. *Woods, supra,* 202 Cal. 675, 677-678.)

▆▆▆ Here the findings establish that appellant, within a few hours after the robbery, joined the continuing conspiracy to convert and with full knowledge of the prior acts of his coconspirators, actively participated in the overall purpose to convert all of the stolen property to their use and benefit. As such active participant, appellant was a joint tortfeasor liable for the entire damage done in pursuance of the common design. In such circumstances, the question of whether or not all or any part of the unrecovered stolen property ever came into appellant's personal possession is immaterial.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.