Filed 6/2/23  D'Arcy v. Andrews CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CAROLINE D'ARCY et al., | D080300 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2014-00084132-CU-MC-CTL) |
| JOY ANDREWS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Reversed and remanded with directions.

Law Office of Barbara L. Richards and Barbara L. Richards; Niddrie Addams Fuller Singh and Victoria E. Fuller for Plaintiffs and Appellants.

J. Turner Law Group and Jason E. Turner for Defendant and Respondent.

This case is before us a second time.  Appellants Caroline D'Arcy and her daughters, Tara and Sinaoife Andrews,[1] previously appealed the probate court's order sustaining respondent Joy Andrews's demurrer to appellants'

---

[1]  We refer to some individuals by their first names to avoid confusion.

complaint, which alleged causes of action for conversion as well as money had and received. We reversed and remanded for further proceedings. (*D'Arcy v. Andrews* (April 20, 2020, D075245) [nonpub. opn.].)

The trial court subsequently held a bench trial. It ruled against appellants, concluding that under a 2006 Marital Settlement Agreement (MSA) entered into by D'Arcy and her then husband, Philip Andrews, Philip had contracted to maintain a life insurance policy to provide child support for their daughters, but that he had remarried and when he died made his new wife, Joy, the designated beneficiary of his policy. The court ruled Joy was entitled to keep the insurance benefit of $245,876.59, less $37,253.83 Philip was obligated to provide the daughters for unpaid child support.

Appellants contend the court erroneously: (1) concluded Philip had a legal right to change the beneficiary designation of the insurance proceeds, and (2) interpreted the MSA to mean that the beneficiary designation provision was only intended to secure unpaid child support. We reverse and remand with directions set forth below.

BACKGROUND

As we set forth the factual and procedural background of the parties' dispute in our prior opinion, we need not repeat them here. We instead reiterate a few points from that opinion for context.

The MSA requires Philip to maintain a life insurance policy through his employer. The employer's 2007 "Personal Benefits Statement" listed D'Arcy as the primary beneficiary of the life insurance policy, with Tara and Sinaoife as secondary beneficiaries.

Philip married Joy in 2006, and later designated her the sole beneficiary of the life insurance policy. In January 2011, Philip died. In

2

February 2011, the insurance company disbursed to Joy $245,876.59 in policy proceeds.

Appellants argued below that they were entitled to the entire insurance proceeds based on the plain language of the MSA, which "ordered Philip to maintain [them] as beneficiaries of the policy so long as he was obligated to support daughters Tara and Sinaoife. In violation of the MSA and dissolution judgment, and without the agreement or knowledge of [D'Arcy], Philip changed the beneficiary designation to name [Joy] as beneficiary. The language in the MSA 'as security for child support' encumbered the policy and restricted Philip's right to change beneficiaries, invalidating Philip's attempt to name Joy as beneficiary while he was required to support Tara and Sinaoife. Philip died while he was obligated to maintain the policy for [the daughters'] benefit. Thereafter, Joy obtained the proceeds of $245,876.59 as an unlawful beneficiary, and has retained them ever since." (Some capitalization omitted.)

Appellants also stated in their trial brief, "All possible lawful beneficiaries are included as plaintiffs, and have agreed to combine their interests." D'Arcy submitted a declaration, in which she reiterated that assertion.

Joy acknowledged below that a portion of the benefit should go towards meeting Philip's obligation to pay child support. She relied on Family Code section 4012, which provides that "[u]pon a showing of good cause, the court may order a parent required to make a payment of child support to give reasonable security for the payment." Joy relied on Insurance Code section

3

10170[2] to support her argument that she was entitled to retain part of the insurance benefit: "No doubt Philip's estate owes a balance of child support to plaintiffs, and [Joy] has offered to pay this balance in full . . . to plaintiffs. But, if the life insurance was 'security for payment of child support', and if Philip retained the right under the . . . policy to revoke or change beneficiaries, then [Joy] has the legal right to the life insurance proceeds." (Some capitalization omitted.)

The court explained in its ruling that based on the causes of action for conversion and money had and received, the single issue before it was "which party has the legal right to the . . . life insurance proceeds[.]" It stated that under the MSA, Philip was required to pay $500 per month per child until they "die, graduate from high school . . . turn 19 (unless the child terminates full-time high school attendance prior to graduating or reaching age 19, in which event the child support obligation shall terminate when the child turns 18 or terminates full-time high school attendance, whichever last occurs), enter into marriage, or otherwise become emancipated." The court made a

---

2     Insurance Code section 10170, subdivision (e) provides that life insurance may be made payable: "Upon those terms and conditions and subject to those restrictions as to revocation by the policyholder and control by beneficiaries as shall have been agreed to in writing by the insurer and the policyholder. If no terms and conditions have been agreed to by the insurer and the policyholder during the insured's lifetime then upon those terms and conditions and subject to those restrictions as may be agreed to in writing by the insurer and the beneficiaries. Any agreement may be rescinded or amended by the parties to the agreement without the consent of any designated beneficiary unless the rights of any beneficiary have been expressly declared to be irrevocable. No agreement hereafter made shall vest in the insurer discretion as to the conditions, time, amount, manner, or method of payment."

4

finding that under the MSA, Philip's child support obligation "ran until June 2011 with respect to Tara [ ] and until June 2013 with respect to Sinaoife [ ]."

Paragraph No. 9 of the MSA states as follows: "As security for child support, and for as long as he is obligated to support Tara and Sinaoife, [Philip] agrees to maintain in full force and effect [h]is employer[-]provided life insurance policy (i.e. current death benefit is two times annual salary). He agrees to pay all premiums when due and retain the beneficiary provisions as they currently read: that is, [Caroline] will continue to be primary beneficiary and Tara and Sinaoife will be secondary beneficiaries in equal shares. If either [Caroline] or [Philip] should remarry, they agree to re-negotiate the naming of his beneficiary. If they are unable to agree then, they now agree that the beneficiary designation shall be changed to Tara [ ] and Sinaoife [ ], in equal shares." (Some capitalization omitted.)

The court ruled that under paragraph No. 9 of the MSA, the requirement Philip obtain life insurance "as security" for payment of child support, corresponds to California Family Code section 4012, which states that "[u]pon a showing of good cause, the court may order a parent required to make a payment of child support to give reasonable security for the payment." The court pointed out California case law has "consistently interpreted [Family Code s]ection 4012 to uphold a requirement that a father set aside an asset for a time to make sure that the child support is paid, and not to give more than what the father owes for child support." Although the court stated that statute is not dispositive on the issue of which party was entitled to retain the insurance benefit, the court emphasized the MSA required Philip to maintain the life insurance " 'as long as he is obligated to support Tara and Sinaoife', and Philip died while still obligated to pay child support because the daughters were under 18", and the life insurance was

5

given " 'as security for payment of child support', and not as an outright property payment or property division."  (Some capitalization omitted.)

The court also concluded that under the Insurance Code, Philip had "a separate and distinct legal relationship with [the insurer] with respect to the life insurance policy, and that policy was governed by California insurance law.  The question here is whether Philip [ ] was barred from changing the beneficiary designation on the [ ] policy.  Put another way, were the original designations of [p]laintiffs as beneficiaries irrevocable?"  The court answered that question by analyzing the insurance contract, which provided Philip may change the beneficiary by filing a written request with his employer or the insurer, and Philip did that, naming Joy.  The court therefore concluded: "Based on the terms of the life insurance policy, and pursuant to Insurance Code [s]ection 10170[, subdivisions] (e) and (f),[3] [the insurer] had the legal obligation to pay out the life insurance policy to Joy[, who] had the legal right to receive those proceeds."

The court ruled Joy had "a legal right to the [ ] life insurance proceeds.  She was not a party to the divorce judgment and MSA of [ ] D'Arcy and Philip [ ].  [She] was an innocent and rightful beneficiary of the life insurance policy.  Under Insurance Code [s]ection 10170, [the insurer] had the legal obligation to pay out the policy to Joy [ ], because Philip [ ] had exercised his legal right under his life insurance policy to designate Joy as the beneficiary.  [¶]  At the same time, plaintiffs have a legal right to unpaid child support that Philip [ ] did not pay.  Because the [ ] life insurance policy was maintained to cover

---

3    Insurance Code section 10170, subdivision (f) provides that "all life insurance benefits shall be paid in the form of a lump-sum payment to the beneficiary or by another settlement option that is clearly described in the claim form."

6

Philip's child support obligations, plaintiffs have a valid claim for a portion of the life insurance proceeds equal to the actual amount of child support owed by Philip or his estate, plus interest at the legal rate of 10 [percent] per annum, which applies to all California judgments." The court accordingly allowed Joy to retain the insurance benefit, except for Philip's child support arrearages of $37,253.83, including interest through October 31, 2021.[4] (Some capitalization omitted.)

## DISCUSSION

### I. *Additional Background*

Broadly speaking, the MSA is divided into the following sections: A preamble; child custody provisions (paragraph Nos. 1-4); child support provisions (paragraph Nos. 5-9); spousal support provisions (paragraph Nos. 10-12); community property provisions (paragraph Nos. 13-22); and concluding provisions, including regarding taxes, reservation of jurisdiction, choice of law and an integrating clause (paragraph Nos. 23-37).

The MSA's paragraphs on child support set forth a computation of Philip's monthly income, the amount he agreed to pay in child support, an acknowledgement that "the support agreement is in the best interest of their daughters and that their needs will be adequately met," Philip's agreement to provide medical and dental insurance for the daughters, and Philip's agreement to maintain a life insurance policy.

### II. *Applicable Law*

In construing an MSA incorporated into a dissolution judgment, we apply the rules governing the interpretation of contracts generally. (*In re*

---

[4] The court stated it requested from the parties "their respective calculations of the total child support arrearages that Philip [ ] or his estate owes to plaintiffs." In ruling on the amount of the award, it found Joy's calculation was "accurate and in conformity with applicable law."

*Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439.)  When, as here, no conflicting extrinsic evidence is offered of an interpretation as to which the language of a marital settlement agreement is reasonably susceptible, and the facts are otherwise undisputed, we apply the unambiguous contract terms to the undisputed facts as a matter of law.  (*Ibid.*)  When the language of a contract is "clear, explicit, and unequivocal, and there is no ambiguity, the court will enforce the express language."  (*Id.* at p. 1440.)

Our primary goal is to effectuate the mutual intention of the parties at the time the contract was formed.  (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 688.)  If possible, we rely on the contract alone, using each clause to interpret the others to give effect to every part.  (*Ibid.*)  "We also follow the rule that the language of a provision should be construed in context, in view of the intended function of the provision and of the contract as a whole.  [Citation.]  This may require inquiry into the circumstances under which the contract was made.  [Citation.]  ' "We interpret words in a contract in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage.  [Citation.]" '  [Citation.]  When possible, courts should ' "avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable." ' "  (*Ibid.*)

"Where there has been no extrinsic evidence as to the meaning of the contract and the construction of the trial court was based solely upon the terms of the contract, the reviewing court is not bound by the interpretation of the trial court."  (*Estate of Schumacher* (1971) 18 Cal.App.3d 146, 151.)

" ' "Conversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion claim are:  (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a

8

wrongful act or disposition of property rights; and (3) damages." ' " (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.) "Notably absent from this formula is any element of wrongful intent or motive; in California, conversion is a 'strict liability tort.' " (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150.) The California Supreme Court has held that conversion "is a continuing tort—as long as the person entitled to the use and possession of his property is deprived thereof." (*de Vries v. Brumback* (1960) 53 Cal.2d 643, 647.)

"A successful plaintiff in a conversion action is entitled to recover '[t]he value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted' plus 'fair compensation for the time and money properly expended in pursuit of the property.' " (*Voris v. Lampert, supra,* 7 Cal.5th at pp. 1150-1151.)

A cause of action for money had and received " 'lies wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter.' " (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 937.)

"A common count is not a specific cause of action . . . ; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness . . . ." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.) "To prevail on a common count for money had and received, the plaintiff must prove that the defendant is indebted to the plaintiff for money the defendant received for the use and benefit of the plaintiff." (*Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223

9

Cal.App.4th 221, 230.) "A claim for money had and received can be based upon money paid by mistake, money paid pursuant to a void contract, or a performance by one party of an express contract." (*Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 958.)

### III. *Analysis*

Applying the above principles, we start by ascertaining the parties' intent behind requiring Philip to maintain a life insurance policy. The plain language of paragraph No. 9 of the MSA, interpreted in the ordinary sense, contains the complete answer to that inquiry: to provide "security for child support." To that end, the parties specified in that paragraph that the amount of the policy benefit would be "two times [Philip's] annual salary." They also agreed Philip "would retain the beneficiary provisions as they currently read"; that is, D'Arcy was the primary beneficiary and the daughters were secondary beneficiaries. Significantly, the parties anticipated and made arrangements for a new beneficiary in case either party remarried. They agreed to "re-negotiate the naming of [Philip's] beneficiary. If they are unable to agree then, they now agree that the beneficiary designation shall be changed to [Tara and Sinaoife] in equal shares."

Under similar facts, when disputes arise concerning an insured's decision to modify an agreement to designate a specific beneficiary, California courts have ruled that, in equity, the mutually agreed-upon beneficiaries are entitled to the insurance benefit. In *Shoudy v. Shoudy* (1921) 55 Cal.App.344 (*Shoudy*), Dexter Shoudy, as part of divorce proceedings from his wife, Emma, agreed to maintain an insurance policy for Emma as long as she remained single, and for their daughter, if she remained unmarried. (*Id.* at p. 346.) Dexter subsequently designated his new wife, Julia, as the

10

beneficiary. (*Id.* at p. 348.) After Dexter's death, Emma sued Julia for the insurance benefits. (*Id.* at p. 349.) The court ruled in Emma's favor concluding that in the MSA, Dexter converted Emma's expectancy interest in the insurance benefit to a more fixed agreement: "Up to the time when Dexter [ ] and [Emma] entered into their said agreement [Emma] was a mere voluntary beneficiary therein, having an expectancy but no vested or equitable rights or interests therein which the insured could not have terminated at will by changing the beneficiary named therein; but when Dexter [ ], in anticipation of the divorce between himself and his wife, offered as one of the terms of settlement of their property rights "to keep in effect for her as long as she remained single" said policies, and when this offer was accepted by her the quality of her interest as a beneficiary in said policies became changed from that of a mere expectancy to a more fixed and permanent relation. She had thenceforth an equitable interest in said policies of which she could not be divested by the mere act of [Dexter] in changing the name of the beneficiary." (*Id.* at p. 351.) The court concluded: Dexter's "act in changing the name of [Emma] as the beneficiary of said policies was at the time such change was made a wrongful act on his part in express violation of what we have found to be the agreement with [Emma]. It was also an entirely voluntary act on his part for which there was no consideration moving from anyone and regarding which there was neither agreement, compulsion, or knowledge on [Julia's] part." (*Id.* at p. 353.)

In *Mutual Life Ins. Co. of New York v. Henes* (1935) 8 Cal.App.2d 306, upon the divorce of Louis and Evelyn Henes, the parties agreed Louis would designate their two children as beneficiaries of Louis's insurance policies. (*Id.* at p. 308.) When Louis died, he had not made the agreed-upon change of beneficiaries. (*Id.* at p. 309.) The executors of Louis's estate sued for the

11

insurance policy proceeds. Citing to *Shoudy, supra,* 55 Cal.App.344, the court ruled the couple's "agreement required [Louis] to name the children as the beneficiaries of said policies and clearly implied that [he] should not at any time thereafter have the right to change the beneficiaries. [Louis] failed to comply with the exact terms of the agreement, but we believe said agreement operated as an equitable assignment of the proceeds of the policy which were to become due upon [his] death." (*Mutual Life Ins. Co. of New York v. Henes,* at p. 311.)

A similar result was reached in *Chilwell v. Chilwell* (1940) 40 Cal.App.2d 550: "While this insurance contract is controlled by the situation as it was at the death of the assured, the property settlement which the parties here made and which was reduced to judgment is still effective and controls the disposition of the proceeds of the policy. This property settlement agreement was entered into by all of the parties who had any interest in the proceeds of the policy, and the making of such an agreement has frequently been held to be, in effect, an equitable assignment of such insurance money." (*Id.* at p. 553.) Citing *Shoudy, supra,* 55 Cal.App.344 with approval, the court stated the insured "could not, in equity, be allowed to take advantage of his own wrong in breaking the property settlement agreement and in violating the terms of the divorce decree." (*Chilwell,* at p. 554.)

Also citing *Shoudy, supra,* 55 Cal.App.344 approvingly is *Waxman v. Citizens Nat. Trust & Savings Bank of Los Angeles* (1954) 123 Cal.App.2d 145: "An insured by contract may waive the right to change a beneficiary and may convert what is usually the contingent interest of a beneficiary of a policy of life insurance into a vested equitable interest. [Citations.] An agreement by an insured, in consideration of the settlement of property

12

rights by which he covenants to make his daughter the sole irrevocable beneficiary of a policy of life insurance, vests her with an equitable interest therein which may not be defeated without her consent." (*Id.* at p. 148.)

More recently, in interpreting Insurance Code section 10170, subdivision (e), a court explained: "It has long been established, when the insured retains the right to change beneficiaries, the designated beneficiary's interest is a mere revocable expectancy vesting only on the insured's death, though the policy is acquired with community funds. [Citations.] [¶] The insured can waive any right to change beneficiaries by appropriate agreement, such as by making an irrevocable beneficiary designation. An irrevocably designated beneficiary obtains a vested contractual right not dependent on any community interest. [Citations.] When an insured ignores a court order or contractual obligation to retain an irrevocable beneficiary, that beneficiary is entitled to recover the insurance proceeds." (*In re Marriage of O'Connell* (1992) 8 Cal.App.4th 565, 577.)

Based on the above authorities, we conclude that under the MSA, Philip was required to maintain the appellants as beneficiaries of his life insurance policy. Further, under the MSA, he waived his right to change a beneficiary under Insurance Code section 10170, subdivision (e). As the parties and the court acknowledged, Philip failed to comply with the MSA when he did not maintain the daughters as beneficiaries of the insurance policy, as a security for child support. Under the MSA's plain terms, because Philip remarried without reaching an agreement with D'Arcy on a new beneficiary of the life insurance policy, Tara and Sinaoife automatically became the beneficiaries in equal shares.

In light of the parties' MSA, we may not, in equity, deprive the daughters of the entirety of the policy's benefits. To the extent the trial court

13

relied on the similarity in language between the MSA and Family Code section 4012 as indicating the parties intended to limit the daughters' portion of the proceeds strictly to a calculation of monthly child support that totaled $37,253.83, we disagree with that interpretation of the MSA. We interpret the prefatory phrase, "as security for child support," as generally indicating the purpose of the life insurance policy provision, consistent with the other MSA paragraphs dealing with child support. But we do not view it as a limitation on the beneficiaries' right to recovery.

Our interpretation is bolstered by the fact the parties expressly fixed the total amount of the policy at twice the amount of Philip's annual salary. If they intended to limit the policy benefit to the amount of the child support Philip was responsible for, they could have specified that in the MSA and set the policy amount accordingly. But they did not do so. Further, paragraph No. 9 of the MSA does not contemplate a sharing of the benefits with any outside party; to the contrary, as stated, the parties preemptively ensured that the election of their daughters as beneficiaries of Philip's policy would be irrevocable, even in the case of the parties' remarriage and their failure to agree on another beneficiary. The trial court's ruling ignored these MSA provisions. " '[C]ourts must interpret contractual language in a manner which gives force and effect to every provision' [citation], and avoid constructions which would render any of its provisions or words 'surplusage.' [Citation.] Put simply, '[a] contract term should not be construed to render some of its provisions meaningless or irrelevant.' " (*In re Marriage of Nassimi, supra,* 3 Cal.App.5th at p. 688.)

Under the law set forth above, appellants adduced sufficient evidence to show the daughters were the rightful beneficiaries of the insurance policy. They also made out the elements of the causes of action for conversion, and

14

money had and received; that is, they had an ownership or right to possession of the insurance benefit, Joy wrongfully retained the insurance benefit, and they suffered damages as a result.  For the reasons stated, the trial court erred in reaching a contrary conclusion.

DISPOSITION

The judgment is reversed.  On remand, the court is directed to enter judgment awarding Tara and Sinaoife, jointly, the life insurance proceeds plus interest as provided by statute.  The costs of appeal are awarded to appellants.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.