[Civ. No. 25015. Second Dist., Div. Two.   June 7, 1961.]

EDITH GLENN, Individually and as Union Business Representative, etc., et al., Plaintiffs; JOSEPH LANZA-ROTTA et al., Appellants, v. CLEARMAN'S GOLDEN COCK INN, INC. (a Corporation), Respondent.

Lewis Garrett and Lionel Richman for Appellants.

Gray, Binkley & Pfaelzer and Orville A. Armstrong, Jr., for Respondent.

McMURRAY, J. pro tem.*—This is an appeal by certain plaintiffs from a judgment of dismissal entered by the trial court after the granting of defendant's motion for judgment on the pleadings. ▮▮▮ A motion for judgment on the pleadings is tantamount to a demurrer and admits the material facts alleged in the pleadings of the adverse party and challenges their sufficiency to state a cause of action (39 Cal. Jur.2d, Pleading § 305). The main question on this appeal is, therefore, whether or not the facts alleged state a cause of action as a matter of law. (*Paraco, Inc.,* v. *Department of Agriculture,* 118 Cal.App.2d 348, 351 [257 P.2d 981].)

Succinctly, the facts pleaded herein are that the appellants were employees of the respondent prior to September 2, 1958, at the respondent's place of business in San Gabriel, California; that on or before that date the appellants signed appli-

---

*Assigned by Chairman of Judicial Council.

cations for membership in the Culinary Workers and Bartenders Union, Local Number 531; and that on the above date the respondent discharged the appellants and since has refused to employ them for the reason that the appellants designated Local Number 531 to be their collective bargaining representative.

The question therefore arises whether the provisions of the Labor Code, specifically sections 922 and 923, provide a basis for civil liability where an employee at will is discharged for union activity. The respondent contends that the allegations of the complaint show only a criminal offense.

Section 922 of the Labor Code provides, in part, that "[a]ny person or agent or officer thereof who coerces or compels any person to enter into an agreement, written or verbal, not to join or become a member of any labor organization, as a condition of securing employment or continuing in the employment of any such person *is guilty of a misdemeanor.*" (Emphasis added.)

The respondent takes the position that the statute above quoted and section 923 of the Labor Code outlaw only the so-called "yellow dog contract" and that the pretrial order contains no allegation that the parties entered into such a contract. The appellants' allegations were (1) their employment, (2) their joining the union, and (3) the termination of that employment. It was further alleged that the termination of employment was solely because of the appellants' union activity. True, the appellants have not expressly alleged that "an agreement, written or verbal, not to join . . . any labor organization" existed. However, liberally construing the complaint and pretrial order, as we must, such an allegation is necessarily implicit in both of them.

Many cases are cited to support appellants' contention that section 922 provides a basis for civil as well as criminal liability. Be that as it may, it is not necessary to decide this contention, because a fair reading of section 923 is persuasive that by that section appellants are afforded all necessary protection and relief. The criminal sanction imposed by section 922 is not the sole remedy afforded an aggrieved employee.

The pertinent provisions of Labor Code, section 923, read: "In the interpretation and application of this chapter, the public policy of this State is declared as follows: . . . Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of

representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.''

Under this section did appellants' have any compensable right which was destroyed by termination of their employment? They concede that their contracts of employment were at will and thus could be so terminated by either party. They contend, however, that this rule is modified by an exception that prevents a contract of employment at will from being terminated where the reason for termination is one which violates established public policy. (*Petermann* v. *International Brotherhood of Teamsters,* 174 Cal.App.2d 184, 188 [344 P.2d 25].) In the Petermann case, this court stated that '' '[t]he term ''public policy'' is inherently not subject to precise definition. . . .' [W]hatever contravenes good morals or any established interests of society is against public policy.'' Assuredly, the language of section 923 can and must be construed as a declaration of this state's public policy as it affects persons in the position of appellants here.

By the enactment of section 923 it is apparent that the Legislature has modified the normal right of discharge by employers to the extent that no employer may discharge an employee solely because of his membership or activity in a labor union.

The right to relief for violation of section 923 was expressly recognized by Justice White, speaking for the District Court of Appeal in *Elsie* v. *Evans,* 157 Cal.App.2d 399, 408-409 [321 P.2d 514], where he said: ''We are not here concerned with litigation involving purely private rights as were the aforementioned cases relied upon by appellant, but are confronted with a situation wherein there is presented the question of whether certain respondents have been subjected to conduct on the part of appellant which it is urged is not only unfair to them, but contrary to the declared public policy of the state of California. In such a case, the courts have full power to afford necessary protection [citation].

''From a mere reading of Labor Code, sections 921 and 923, there can be little if any doubt that a question of public policy is primarily involved in this litigation. . . . 'This purpose is plainly evidenced by section 923, which commits the state,

*as a matter of public policy,* to the principles of collective bargaining.' "

The fact that damages are sought here, rather than equitable relief, does not impair the validity of this statement.

Respondent contends first that section 923 is expressly limited in its own terms to chapter 1, division 2, part 3 of the Labor Code and cannot limit the plain meaning of Labor Code, section 2922, which provides that an employment for no specified term may be terminated at will. The Supreme Court of California, in *Chavez* v. *Sargent,* 52 Cal.2d 162, at 190-191 [339 P.2d 801], expressly rejects the contention that the application of section 923 is limited to that chapter of the Labor Code. In addition, this court, in *Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d 184 at 188, answered the same contention contrary to respondent's position with the express recognition that the right provided by section 2922 of the Labor Code may be limited by considerations of public policy. The respondent next argues, however that *Petermann* is limited to its own facts, that is, discharge for refusal to commit a felony. To support this proposition, the case of *Mallard* v. *Boring,* 182 Cal.App.2d 390 [6 Cal.Rptr. 171] was cited. In that case the court refused to find a violation of public policy in the discharge of an employee because she informed the local justice court that she would be a willing trial juror. The only statute there in issue was section 1101 of the Labor Code which prohibited an employer from forbidding or preventing employees from participating in politics. The court determined that serving as a juror was not a political activity within the statutory meaning and thus that there was no basis for liability. The court refused to hold that a discharge under these circumstances was contrary to public policy because it felt that if public policy required this protection be afforded employee-jurors, it should be done by the Legislature. It therefore seems clear that *Mallard* v. *Boring, supra,* supports the appellants rather than the respondent. If a legislative enactment of public policy is required, section 923 provides a clear and continuing basis for civil liability here.

Respondent argues that *Elsis* v. *Evans, supra,* 157 Cal.App.2d 399, was overruled *sub silentio* by the California Supreme Court in *Petri Cleaners, Inc.* v. *Automotive Employees, etc. Local No. 88,* 53 Cal.2d 455 [349 P.2d 76]. In that case, the action did not involve employees, but was a suit by an employer against a union. The court determined only "that employers are not required by law [Lab. Code, § 923,

*supra*] to engage in collective bargaining and that closed or union shop agreements . . . are lawful in this state . . ." (P. 474.) The respondent argues that the Supreme Court in effect has determined that section 923 does not confer any employment rights on employees which they may enforce against an employer. A fair reading of the Petri case does not support this conclusion, since the case did not involve employees and thus does nothing more than disapprove the rule of compulsory collective bargaining. To extend that case beyond its own limiting facts seems unnecessary in view of the language at pages 469-470:

"Sections 920-923 of the Labor Code [footnote] imposed certain restrictions on the employer only 'to balance the industrial equation . . . by placing employer and employee on an equal basis' [citation]. . . . Section 923 announces it the public policy of this state 'to uphold the freedom of employees to organize and enter into collective bargaining contracts for their own protection. . . .' "

It would be a hollow protection indeed that would allow employees to organize and would then permit employers to discharge them for that very reason, unless such protection would afford to the employees the right to recover for this wrongful act. The statute provides the necessary basis for civil liability for such termination of employment.

Reversed and remanded.

Fox, P. J., and Ashburn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 2, 1961. Schauer, J., was of the opinion that the petition should be granted.