[Civ. No. 25822.   First Dist., Div. Four.   July 28, 1969.]

FRED WETHERTON et al., Plaintiffs and Appellants, v. GROWERS FARM LABOR ASSOCIATION et al., Defendants and Respondents.

Robert L. Gnaizda and Martin R. Glick for Plaintiffs and Appellants.

Abramson & Church and Andrew Church for Defendants and Respondents.

CHRISTIAN, J.—Appellants are field employees of Martin Produce, Inc., a Salinas Valley carrot producer. They brought this action against Martin Produce and against respondents, seeking damages and injunctive relief upon allegations that all the defendants coerced appellants not to join a labor organization. After the complaint was filed, appellants entered into a settlement agreement with Martin under which appellants were reinstated in their employment and the action

was dismissed as to Martin and certain related defendants. Thereafter, the court granted a motion for summary judgment made by the other defendants; this appeal followed.

A summary judgment may properly be granted under Code of Civil Procedure section 437c, where it appears from affidavits and depositions submitted by the parties that there is no triable issue of fact (*Property Controllers, Inc.* v. *Shewfelt* (1966) 245 Cal.App.2d 755 [54 Cal.Rptr. 218] ; *Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 469 [33 Cal.Rptr. 661]). The affidavits submitted by the moving party are to be strictly construed; the counteraffidavits of the party resisting the motion for summary judgment "are sufficient if they *disclose* evidence supporting *a possible defense or cause of action*; they need not, at this stage, prove anything. The purpose of the summary judgment procedure is *not to try the issues,* but merely to determine *whether there are issues to be tried.* . . ." (2 Witkin, Cal. Procedure (1954) Proceedings Without Trial, § 78, at p. 1715; see *Orser* v. *George* (1967) 252 Cal.App.2d 660 [60 Cal.Rptr. 708].)

The following narrative is abstracted from the affidavits and depositions upon which the summary judgment was founded. Before August 1967, all nine appellants were employees of Martin Produce, Inc. Martin Produce was a member of respondent Growers Farm Labor Association (hereinafter Labor Association) and respondent Grower-Shipper Vegetable Association (hereinafter Vegetable Association). The Labor Association was formed in order to supply agricultural labor, particularly Mexican nationals, to its members. The Vegetable Association is a nonprofit corporation formed in order generally to promote the interests of the agricultural industry in the Salinas Valley. Respondent Houseberg is the executive vice-president of each of these associations. In late July appellants joined the United Farm Workers Organizing Committee. On July 31 one of the appellants was summarily fired, without explanation, just after John W. Martin, Jr. (President of Martin Produce) had received a telephone call from an employee of the State Conciliation Service informing him of union activity in the Salinas Valley. Martin immediately telephoned respondent Houseberg, asking him to meet with Martin and an employee in order to discuss the union situation.

The meeting took place the same day in the office of Martin Produce; present were John Martin, respondent Houseberg, a foreman, and appellant Ortiz. Martin's purpose in convening

the meeting was to discover the extent and nature of union activity among his employees. Martin and Houseberg questioned appellant Ortiz for about an hour regarding union approaches to Martin employees. A declaration by Ortiz relates that Houseberg did the questioning and took notes of his answers, that Houseberg said he would discover the name of the union and its representatives in the field, and that Houseberg told Martin that all of his employees could be fired because the unions had no power in that area. Martin then told Ortiz to go back to the fields and tell the other appellants that they would be fired if they joined a union.

On August 8 Martin received a telegram from Caesar Chavez (of the United Farm Workers Organizing Committee) disclosing that one of Martin's machine operators had joined the union. At Martin's request, Houseberg came to Martin's office to discuss the situation. The next day Martin briefly discussed with Houseberg the idea of replacing appellants with subcontracted labor. When Martin's foreman learned that appellants had joined the union, Martin immediately made arrangements for a subcontractor to furnish a crew and laid off the appellants.

In their first cause of action, appellants assert liability on the part of all the defendants under Labor Code sections 921-923, on the basis of a generally alleged status of the defendants as co-employers. Nothing in the affidavits and depositions suggests the existence of such a status on the part of respondents, as distinguished from the other defendants who have been dismissed. There was thus no fact question as to the liability asserted against respondents under the first cause of action; the summary judgment must therefore be affirmed as to it.

In their second cause of action, appellants alleged that respondent Houseberg, acting individually and in behalf of the Farm Labor Association and the Vegetable Association, conspired with Martin and the other defendants to violate appellants' rights under the Labor Code and that appellants lost their jobs as the result of the operation of this conspiracy. Houseberg specifically and in detail declared that neither association had anything to do with the events in question; but appellant Ortiz stated that at the inquisitory meeting on July 31 Houseberg was introduced as "the head of the growers." It fairly appears that, whatever his role at the meeting may have been, he was there on duty for his employers.

Martin related in his deposition that respondents had no control over the employees or the employment policies of Martin Produce and that Martin Produce acted independently in making all decisions which led to the firing of appellants. But appellant Ortiz declared that Houseberg dominated the July 31 meeting regarding union activity at Martin Produce and gave advice to John Martin in Ortiz' presence as to the firing of at least one employee. Although Ortiz' declaration was directly contradicted by Martin's deposition, that conflict was not to be resolved on motion for summary judgment.

Assuming the facts to have been as related in the Ortiz declaration, the first question is whether the second cause of action could present *any* triable issue; that is, whether an action for damages may be based upon sections 922 and 923 of the Labor Code.[1] ▓▓▓ Violation of a statute embodying a public policy is generally actionable even though no specific remedy is provided in the statute; any injured member of the public for whose benefit the statute was enacted may bring an action (*McIvor* v. *Mercer-Fraser Co.* (1946) 76 Cal.App.2d 247 [172 P.2d 758]). Respondents suggest, citing *Petri Cleaners, Inc.* v. *Automotive Emp. etc. Local No. 88* (1960) 53 Cal.2d 455 [2 Cal.Rptr. 470, 349 P.2d 76], that because section 922 provides only a criminal penalty and section 923 does not explicitly go beyond a statement of public policy, a civil action for damages is not authorized. But the *Petri Cleaners* case and *Chavez* v. *Sargent* (1959) 52 Cal.2d 162 [339 P.2d 801], upon which respondents also rely, involve relief sought by an employer against the actions of certain unions. They do not settle the effect of Labor Code sections 922 and 923 as regards relationships between an employer and his employees.

---

[1]Section 922. ''Any person or agent or officer thereof who coerces or compels any person to enter into an agreement, written or verbal, not to join or become a member of any labor organization, as a condition of securing employment or continuing in the employment of any such person is guilty of a misdemeanor.

Section 923. ''Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.''

Respondents' contentions that these Labor Code sections out-law only explicit "yellow dog contracts" (agreements not to join a union), and that they do not constitute a basis for a civil action, were both considered and rejected in *Glenn* v. *Clearman's Golden Cock Inn, Inc.* (1961) 192 Cal.App.2d 793 [13 Cal.Rptr. 769]. The complaint in that case alleged only that the appellants had been discharged on the basis of their joining a union; the court held that the "agreement not to join a union," necessary for application of section 922, was "necessarily implicit" in a complaint stating the above facts (192 Cal.App.2d, at p. 795). It is true that the *Glenn* case involved a motion for judgment on the pleadings while the present case involves a summary judgment. But there were no special facts alleged in *Glenn* which distinguish it from the present case. ■ The *Glenn* court declared that section 923 enunciates a public policy of this state and that the dis-charged workers could obtain damages as well as injunctive relief for violation of their rights under this section (192 Cal.App.2d, at pp. 796-797; also see *Elsis* v. *Evans* (1958) 157 Cal.App.2d 399, 408 [321 P.2d 514]). ■ If, as was recited in the Ortiz declaration, Houseberg declared that he "would discover the name of the union and its representa-tive" and Ortiz was told "to go back to the fields and warn the boys that if they joined a union they would be fired" there can be no question that there was a violation of the public policy established by section 923. Such alleged actions are directly contrary to the statutory declaration that "it is necessary that the individual workman have full freedom of association . . . and that he shall be free from the interfer-ence, restraint, or coercion of employers of labor, or their agents, . . ." That is so whether or not any express or implied "yellow dog" contract was sought in violation of section 922.

Respondents argue that even if a cause of action was shown against the employer, the summary judgment was properly granted because there was no showing of an employment rela-tionship between appellants and respondents and because there is no cause of action for civil conspiracy in California. ■ It is true that there is no independent action for civil conspiracy; there is no civil liability of parties who merely agree to engage in wrongful conduct. But joint liability does attach if a joint project to do a wrongful act is carried out and damage has resulted. (2 Witkin, Summary of Cal. Law (1960) Torts, § 15; 2 Witkin, Cal. Procedure (1954) Plead-

ing, § 469.) In tort (as opposed to a criminal action) " 'the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity' " (*de Vries* v. *Brumback* (1960) 53 Cal.2d 643, 650 [2 Cal.Rptr. 764, 349 P.2d 532] [citing *Mox, Inc.* v. *Woods* (1927) 202 Cal. 675, 677 678 [262 P. 302]]).

Because the second cause of action alleged, and the Ortiz declaration reiterated, coercive action on the part of respondent Houseberg, it might appear that no showing of conspiracy was required in order to hold him in the case. But there is nothing to indicate that compensable injury resulted from his direct action; the alleged damage to appellants flowed instead from Martin's action in discharging them. Therefore, a showing of conspiracy is essential to appellants' claim against Houseberg.

The question is whether a plan was shown for concerted action to be taken by Houseberg and the other defendants to achieve the unlawful purpose of depriving appellants of their rights under the Labor Code. (*Holder* v. *Home Sav. & Loan Assn.* (1968) 267 Cal.App 2d 91, 108 [72 Cal.Rptr. 704].) Liability as a co-conspirator depends upon projected joint action. "The mere knowledge, acquiescence, or approval of the act, without co-operation or agreement to co-operate is not enough . . ." (15A C.J.S., Conspiracy, § 2, p. 601). But once the plan for joint action is shown, "a defendant may be held liable who in fact committed no overt act and gained no benefit therefrom" (*Schaefer* v. *Berinstein* (1956) 140 Cal.App.2d 278, 293 [295 P.2d 113]; *Wise* v. *Southern Pac. Co.* (1963) 223 Cal.App.2d 50, 64 [35 Cal.Rptr. 652]).

The scope of the conspiracy may be inferred from what was done in furtherance of it and from other surrounding circumstances (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 316 [70 Cal.Rptr. 849, 444 P.2d 481]). Here, according to the Ortiz declaration, Houseberg did more than advise or approve of the actions of Martin. He questioned Ortiz at length concerning union activity, after having been identified as "the head of the growers." He made statements with menacing connotations concerning union activity and informed Ortiz that he and his coworkers "could be fired because Chavez had no power here and the company could always hire a new crew."

At the end of this same meeting, Ortiz was sent off to warn his co-workers that "if they joined a union they would be fired." From these circumstances can be inferred a joint project for Martin to discharge appellants and for Houseberg to influence other growers in the area not to hire appellants if they should insist on joining a union. If at trial these inferences drawn from the Ortiz declaration rise to the level of proof, appellants will prevail (cf. *Wise* v. *Southern Pac. Co.*, *supra*, 223 Cal.App.2d 50; *Neblett* v. *Elliott* (1941) 46 Cal. App.2d 294 [115 P.2d 872]).

▇▇▇ If Houseberg in fact entered into a conspiracy calling for joint action, it would not be a defense that his actual participation amounted only to advising the active member of the conspiracy or acting as his agent (*Celano* v. *Frederick* (1964) 54 Ill.App.2d 393 [203 N.E.2d 774]; see also *Wahlgren* v. *Bausch & Lomb Optical Co.* (7th Cir. 1934) 68 F.2d 660, 664).

▇▇▇ Respondents suggest that the settlement of the action and the dismissal of defendant Martin Produce (and its officers and managerial employees) is fatal to appellants' conspiracy count, for it leaves only one party to the alleged conspiracy. But if a conspiracy originally existed and was carried into action, the defendants were joint tortfeasors (*de Vries* v. *Brumback*, *supra*, 53 Cal.2d 643, 650). ▇▇▇ A release or dismissal as to one joint tortfeasor does not operate to release other tortfeasors from liability; it reduces the claims against those not released to the extent relief is obtained under the release. (Code Civ. Proc., § 877.) ▇▇▇ The settlement agreement specifically provides that it does not apply to respondents; further, the settlement includes payment of only a portion of the damages sought by appellants. Respondents may still be liable as claimed conspirators and joint tortfeasors for the remainder of the damages sought by appellants. Therefore the dismissal entered pursuant to the settlement agreement is no bar to appellants' maintaining this action against respondents.

The judgment is affirmed as to the first cause of action and reversed as to the second cause of action. Appellants will recover costs.

Devine, P. J., and Rattigan, J., concurred.