[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE OF DEFENDANTS BUCKLEYBROADCASTING CORP., WAYNE GRISCOM AND WAYNE MULLIGAN
The Complaint in this action alleges that the plaintiff, a program manager for radio station WDRC, was fired from that job after he disclosed to his girlfriend in a telephone conversation, which she secretly recorded, that the radio station had asked him to terminate one of the station's disc jockeys. The defendants, Buckley Broadcasting Corp., Wayne Griscom, also known as Jerry Kristafer, and Wayne Mulligan, have moved to strike Counts One, Two, Three, Five, Six and Seven of the Amended Complaint of May CT Page 9941 15, 1996.[1] At oral argument of the Motion to Strike the plaintiff's attorney represented that the plaintiff did not oppose the striking of Counts Three and Six. Those Counts are hereby ordered stricken, and this decision deals only with the Motion to Strike Counts One, Two, Five and Seven.
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990); Blancato v. Feldspar Corp., 203 Conn. 34,36, 522 A.2d 1235 (1987).
The First Count of the Amended Complaint contains the following allegations. The defendant, Buckley Broadcasting Corporation (Buckley) owns and operates the WDRC AM and FM radio stations in Bloomfield, Connecticut, where the plaintiff, Frank Holler, was employed as a disc jockey and program director from August, 1991 until January 23, 1996. As program director the plaintiff's job responsibilities included hiring and firing disc jockeys with the approval of the management of Buckley. Defendant Wayne Griscom was and is a disc jockey employed by WDRC FM and is known as Jerry Kristafer. In January, 1996 the plaintiff was informed by defendant Wayne Mulligan, the station general manager of WDRC, that Buckley had decided to replace defendant, Jerry Kristafer, due to declining ratings. Mulligan told the plaintiff that he should find a replacement for Kristafer and then fire him.
During this time the plaintiff "was in the process of ending a romantic relationship with the defendant, Laura Barre." Complaint ¶ 10. On January 18, 1996 the plaintiff had a private telephone conversation with the defendant Barre during which he mentioned to her Buckley's decision to replace Jerry Kristafer.
Barre secretly recorded the telephone conversation in victim of Connecticut General Statutes § 52-570a, which provides that it is illegal to record a private telephone conversation without the consent of all parties. On January 19, 1996 Barre played for Jerry Kristafer a portion of the taped telephone conversation in which the plaintiff discussed the decision of WDRC to replace Kristafer. Kristafer then taped that portion of CT Page 9942 the tape of the telephone conversation himself.
Thereafter Kristafer contacted Wayne Mulligan and Richard D. Buckley, the president and principal owner of Buckley, and informed them that he was aware that WDRC was planning to fire him and "discussed that he gained this knowledge from the defendant, Laura Barre, from her illegally taped telephone conversation with plaintiff, and played the tape for both of them." Complaint, ¶ 15.
On January 23, 1996 Mulligan terminated the plaintiffs employment for the reason that the plaintiff had discussed WDRC management's decision to replace Kristafer, which was a breach of the radio station's confidentiality. When Mulligan terminated the plaintiffs employment he knew that the telephone conversation had been secretly recorded without the plaintiff's knowledge or consent. Buckley's actions in terminating the plaintiff's employment on the basis of an illegally taped telephone conversation were wrongful and a breach of the covenant of good faith and fair dealing in that it violated the important public policies embodied in Connecticut General Statutes § 52-570d.
The First Count of the Complaint does not allege that there was any employment contract in existence between the plaintiff and Buckley. Therefore, the plaintiff was an "employee at will" and as such, his employment relationship was terminable at the will of either party, Battista v. United Illuminating Co.,10 Conn. App. 486, 495, 523 A.2d 1356 (1987), without any requirement that the employer have good cause for such termination. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,474, 427 A.2d 385 (1980).
The Connecticut Supreme Court articulated a narrow exception to the employment at will rule when it recognized a common law cause of action in tort for dismissal from employment "if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Sheets at 475.
In Sheets the plaintiff was employed by the defendant, a producer of frozen food products, as its quality control director and operations manager. In his capacity as quality control director and operations manager, the plaintiff noticed deviations from the specifications contained in the defendant's standards and labels, in that some vegetables were substandard and some CT Page 9943 meat components underweight. These deviations violated statutes regulating the labeling of food. In May of 1977, the plaintiff communicated in writing to his employer concerning the violations. His employment was terminated some five months later.
In formulating the so-called "public policy" exception to the employment at will doctrine, the Court in Sheets stated:
 The issue then becomes the familiar common-law problem of deciding where and how to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not. We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. We are, however, equally mindful that the myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers.
179 Conn. at 477 (Emphasis added.)
Under the public policy exception the "defendant's reason for discharging the plaintiff must contravene public policy."Battista, 10 Conn. App. 498. A discharge is not actionable without "more than an incidental effect on public policy."Battista, 10 Conn. App. 497. Where a public policy violation is merely incidental to termination of employment, the public policy exception does not apply. Thus, in Morris v. Hartford Courant, Co.,200 Conn. 676, 680, 513 A.2d 66 (1986) the Court held that a false but negligently made accusation of criminal conduct did not constitute a public policy violation sufficient to permit the plaintiff to claim wrongful termination under Sheets.
As the language of the Court in Sheets indicates, the public policy exception was meant to permit the courts to interfere with an employer's "exercise of managerial discretion" only in cases where employers sought to punish employees for exercising their "rights as good citizens." The Sheets Court relied on the following cases in other jurisdictions in creating the public policy exception:
 [O]ther jurisdictions that have found wrongful and actionable a discharge in retaliation for the exercise of an employee's right to: (1) refuse to commit perjury; Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 189, 344 P.2d 25 (1959); (2) CT Page 9944 file a workmen's compensation claim; Frampton v. Central Indiana Gas Co., 260 Ind. 249, 252, 297 N.E.2d 425 (1973); Sventko v. Kroger Co., 69 Mich. App. 644, 648-49, 245 N.W.2d 151 (1976); Brown v. Transcon Lines, 284 Or. 597, 603, 588 P.2d 1087 (1978); (3) engage in union activity; Glenn v. Clearman's Golden Cock Inn, Inc., 192 Cal.App.2d 793, 798, 13 Cal.Rptr. 769 (1961); (4) perform jury duty; Nees v. Hocks, 272 Or. 210, 216-19, 536 P.2d 512 (1975); Reuther v. Fowler Williams, Inc., 255 Pa. Super. 28, 31-32, 386 A.2d 119
(1978).
Sheet, 179 Conn. at 476 (Emphasis added.)
The public policy violations present in Sheets and the cases relied on by the Court in Sheets directly related to the reason for the termination. Mr. Sheets was terminated for attempting to get his employer to comply with the laws concerning the labeling of food. The plaintiffs in the other cases were terminated either for exercising a legal right or duty (jury participation) or for refusing to violate a law (refusing to commit perjury.) In this case, the complaint alleges that Holler was terminated for disclosing confidential management decisions of his employer to his girlfriend. The violation of § 52-570a was merely incidental to the termination. Moreover, the violation was committed by neither the employer, nor the employee, but a third party.
This is not a case where Holler was terminated as a "punishment" for refusing to violate § 52-570a, or any other statute. It is not even a case where Buckley illegally taped a conversation in order to gain information used in Holler's termination. Here, Buckley allegedly based its decision to terminate Holler on accurate information provided to it by Barre, a third party. The fact that such information was obtained by Barre in violation of a statute was purely incidental to the termination.
Holler's employment was terminated because he disclosed confidential information of his employer to a third party. Depending on Barre's use of the information, such disclosure could have had a devastating effect, both personally and professionally, on Kristafer. There is no public policy which protects the employment of those who engage in such disclosures.
The First Count also alleges a violation of the covenant of good faith and fair dealing. However, in Magnan v. AnacondaCT Page 9945Industries, Inc., 193 Conn. 558, 572, 479 A.2d 781, the Supreme Court held that the covenant of good faith and fair dealing is a concept of contract construction, and an at will employee could not use such a concept to transform employment which was terminable at will into one which was terminable for cause, unless he stated a cause of action for wrongful dismissal. For the reasons set forth above, the First Count fails to state a cause of action for wrongful termination and is ordered stricken.
The Second Count seeks to recover for negligent infliction of emotional distress. In order to sustain a claim for negligent or unintentional infliction of emotional distress, the plaintiff must establish that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress, and that distress, if it were caused, might result in illness or bodily harm. Buckman v. People's Express, Inc.,205 Conn. 166, 173, 530 A.2d 596 (1987); Morris v. Hartford Courant,200 Conn. 676, 683, 513 A.2d 66 (1986).
Every termination of employment clearly has the potential to create significant emotional distress in the employee who is terminated. But the mere fact of termination alone is not sufficient to constitute the unintentional infliction of emotional distress. Lark v. Post Newsweek Stations Conn.,
No. CV 94 070 5326, Superior Court, Judicial District of Hartford/New Britain, (1995 Ct. Sup. 9480, Wagner, J.) In Lark the plaintiff alleged that the defendant ". . . knew how important the job was to him, and knew that taking him off the air would cause him emotional distress, and that in any event the determination of extreme and outrageous conduct is a jury question." Nevertheless, the court held that the plaintiff had ". . . not alleged sufficient facts to show that [the defendant] knew its conduct would result in harm to him, or that [the defendant] created an unreasonable risk of causing harm to him," and granted the defendant's motion to strike.
The Court in Morris recognized that termination of employment could constitute unintentional infliction of emotional distress based upon unreasonable conduct of the defendant in the termination process. In Leniart v. C S Distributors, Inc.,
No. CR92-516354S 1994 Ct. Sup. 689, Superior Court, Judicial District of Hartford-New Britain at Hartford (Jan. 21, 1994, Corradino, J.) the Superior Court explained the necessity of an allegation of unreasonable conduct in the termination process as follows: CT Page 9946
 If in fact the defendant was terminated for legitimate business reasons, the defendant can not be held liable for the normal distress and hurt feelings that result when ever anyone is discharged from employment. Although Stoklasa and the defendant talk in terms of foreseeability the real issue is properly limiting the ambit of a doctrine that provides protection to the interest a person has in his or her peace of mind. There must be some underlying wrongdoing which gives rise to a claim under this theory of recovery — see discussion at pages 344-345 of Montunieri v. SNET Co., 175 Conn. 337
(1978). Morris v. Hartford Courant Co., supra talks about "unreasonable conduct of the defendant on the termination process." 200 Conn. at page 682. Here the defendant was called into the office of an officer of the defendant company and informed along with five others that she was being laid off. There is no claim that the meeting or any other aspect of the actual discharge was done in an inconsiderate humiliating, or embarrassing manner. The mere fact of termination under these circumstances does not give rise to a claim for unintentional infliction of emotional distress. To hold otherwise would completely alter the nature of employment at will contracts and in effect imply that individual employers and companies are liable for the emotional distress they inflict on others when they are merely engaging in business conduct which society is not willing to consider improper or unacceptable.
In this case the plaintiff does not allege unreasonable conduct in the termination process. Therefore, the Second Count fails to state a cause of action for negligent infliction of emotional distress and may be stricken.
The Fifth Count alleges that Jerry Kristafer tortiously interfered with the plaintiff's employment relationship with Buckley. The Complaint alleges:
 15. Defendant Jerry Kristafer contacted the WDRC station general manager, defendant Wayne G. Mulligan, and the president and principal owner of the defendant, Buckley Broadcasting Corporation, Richard D. Buckley, and informed them that he was aware that WDRC management was planning to fire him and discussed that he gained this knowledge from the defendant, Laura Barre, from her illegally taped telephone conversation with plaintiff, and played the tape for both of them.
CT Page 9947
 23. Defendant Jerry Kristafer interfered with plaintiff's employment with defendant Buckley Broadcasting Corporation in that he contacted defendant's president and station general manager and informed them that plaintiff had breached station confidentiality and played for them the illegally taped telephone conversation.
 24. Defendant Jerry Kristafer intentionally interfered with plaintiff's employment relationship with defendant in an effort to discredit plaintiff in the eyes of station management, get him fired and save his own job.
"The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendant's knowledge of that relationship, the intent to interfere with it and the consequent actual loss suffered by the plaintiff." Hart, Nininger Campbell Associates, Inc. v. Rogers, 16 Conn. App. 619, 629,548 A.2d 758 (1988). "[A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . . `[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.'" Robert S. Weiss Associates, Inc. v.Weiderlight, 208 Conn. 525, 536, 546 A.2d 216 (1988). "This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." Blake v. Levy, 191 Conn. 257,261, 464 A.2d 52 (1983).
In determining whether Kristafer's conduct was so "improper" as to constitute tortious interference with employment, this court "must weigh [the] competing personal and community interests involved." Blake, supra at 262. Among those interests are the factors specifically listed in 4 Restatement (Second), Torts 767 (1979): (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor s conduct to the interference; and (g) the relations between the parties.Blake, supra at 263, n. 3.
The Complaint alleges that when Kristafer learned that the plaintiff had told Barre that WDRC intended to fire Kristafer, he communicated this knowledge to the station manager and owner. CT Page 9948 Such communication clearly was not improper and not made to interfere with Holler's job, but rather to inquire as to whether Kristafer's own job was in jeopardy. The Complaint further alleges that Kristafer intentionally interfered with the plaintiffs employment in an effort to discredit the plaintiff. Such an allegation is not factual, but rather, a legal conclusion, the truth of which the court need not accept when considering a motion to strike. The only factual allegations as to the manner in which Kristafer intentionally interfered with the employment relationship between Holler and WDRC are that Kristafer informed WDRC management that Holler had told Barre that he was going to fire Kristafer. When the court applies the balancing test suggested by the Restatement, it is clear that the Kristafer's conduct was not "improper." It is obvious that his primary motive was not to interfere with Holler's job, but to make legitimate inquiry as to his own. Based on the foregoing Count Five should be stricken for failure to state a cause of action.
The Seventh Count seeks to recover against Jerry Kristafer under Connecticut General Statutes § 52-570d. That statute provides:
 Sec. 52-570d. Action for illegal recording of private telephonic communications. (a) No person shall use any instrument, device or equipment to record an oral private telephonic communication unless the use of such instrument, device or equipment (1) is preceded by consent of all parties to the communication and such prior consent either is obtained in writing or is part of, and obtained at the start of, the recording, or (2) is preceded by verbal notification which is recorded at the beginning and is part of the communication by the recording party, or (3) is accompanied by an automatic tone warning device which automatically produces a distinct signal that is repeated at intervals of approximately fifteen seconds during the communication while such instrument, device or equipment is in use.
Section 52-570d creates a cause of action which was not present in the common law. A cause of action which is purely statutory and creates new liability which was not present in common law, must be strictly construed. Lynn v. HaybusterManufacturing, Inc., 226 Conn. 282, 290, 627 A.2d 1288 (1993);Munroe v. Great American Insurance Company, 234 Conn. 182, 187,661 A.2d 581 (1995); Wethersfield v. National Fire Ins. Co.,145 Conn. 368, 371, 143 A.2d 454 (1985); Zotta v. Burns, 8 Conn. App. 169,173, 511 A.2d 373 (1986). Section 52-570d prohibits the CT Page 9949 recording of a private telephonic conversation. It does not prohibit or restrict the use of such recording by third parties. Therefore, § 52-570d was not violated by Jerry Kristafer's alleged rerecording of the tape played to him by Barre. The Motion to Strike the Seventh Count of the Complaint is granted.
By the court,
Aurigemma, J.