2016 IL App (3d) 150640

Opinion filed September 19, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| WILLIAM R. SEEMAN, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-15-0640 |
| | ) | Circuit No. 14-MR-1925 |
| | ) | |
| WES KOCHEL, INC., | ) | Honorable |
| | ) | John Anderson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Holdridge specially concurred, with opinion.
Justice Wright concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1        Plaintiff, William R. Seeman, appeals from the trial court's order granting summary

judgment for defendant, Wes Kochel, Inc. Plaintiff argues the court erred in granting defendant's

motion for summary judgment because the court's ruling was not supported by the Volunteer

Emergency Worker Job Protection Act (Volunteer Act) (50 ILCS 748/1 *et seq.* (West 2014)) or

the common law and public policy. We affirm.

FACTS

¶ 3     Plaintiff filed a complaint that alleged two claims of retaliatory discharge. The first count alleged retaliatory discharge based on a violation of the Volunteer Act (*id.*). The second claim alleged retaliatory discharge based on the common-law theory that plaintiff's discharge was in contravention of public policy.

¶ 4     In count I of the complaint, plaintiff alleged that he was hired by defendant in July 2012. Plaintiff was also a volunteer firefighter for the Rockdale Fire Protection District (District). On the morning of January 15, 2014, plaintiff was scheduled to work for defendant. Before plaintiff's shift, he responded to a fire call, and afterwards he reported for his shift. Wes Kochel, a relative of defendant,[1] informed plaintiff that his employment with defendant had been terminated for being tardy. Plaintiff told Kochel he could not be terminated based on his actions as a volunteer firefighter because he was protected by the Volunteer Act. Kochel said he did not care and continued the termination process. Plaintiff alleged that he was terminated for engaging in an activity protected by the Volunteer Act and sought reinstatement and a monetary judgment in excess of $10,000.

¶ 5     In count II, plaintiff realleged many of the allegations from count I, including that defendant terminated his employment after he attended a fire call on January 15, 2014, and, as a result, was tardy for work. Plaintiff further alleged that he was "retaliated against because of his protected activity" and his "termination was in violation of public policy of the State of Illinois." Due to his unlawful termination, plaintiff suffered loss of earnings and benefits and sought a judgment in excess of $10,000.

---

[1]Plaintiff's complaint does not specify whether Kochel was an employee of defendant; however, from the context of the complaint, it seems that Kochel was employed by defendant and he was plaintiff's supervisor.

¶ 6    Defendant filed a motion for summary judgment that alleged there were no genuine issues of material fact. 735 ILCS 5/2-1005(c) (West 2014). In the motion, defendant argued that plaintiff was not protected by the Volunteer Act because he received more than $240 in compensation from the District and he was not discharged in violation of public policy.

¶ 7    In support of its motion, defendant attached, as defendant's exhibit A, plaintiff's response to defendant's Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) interrogatories. In the interrogatories, plaintiff said he began volunteering for the District on March 3, 2011. Plaintiff was paid "incentive pay" in the following amounts: $492.50 in 2011, $842.50 in 2012, $1142.50 in 2013, and $1035 in 2014. Plaintiff said the pay was based on the number of calls he responded to and the training he attended. On January 15, 2014, at 6:45 a.m., plaintiff notified defendant via pager that he was attending a fire call. Plaintiff was scheduled to work for defendant at 8 a.m. Plaintiff returned to work around 12:30 p.m.

¶ 8    Defendant's exhibit B included plaintiff's response to defendant's request to produce documents. The documents included plaintiff's 2014 W-2 from the District, which showed he received "Wages, tips, other comp" in the amount of $1035. The documents also included a letter from the District that stated the District compensates each volunteer firefighter for training and calls attended and, at the end of the year, each firefighter receives a check for "their time served." In response to a subpoena, the District provided its 2013 and 2014 payroll report for plaintiff and a copy of a check issued to plaintiff.

¶ 9    The court granted summary judgment for defendant finding it was "bound by language of [the Volunteer Act] and [the Fire Protection District Act (Protection Act) (70 ILCS 705/6 (West 2014))]; it is not the court's role to rewrite statutes to make them more equitable or sensible. That is the legislature's role." Plaintiff appeals.

¶ 10                                       ANALYSIS

¶ 11                                   I. Summary Judgment

¶ 12          Plaintiff argues summary judgment was inappropriate because (1) the court's ruling was based on an erroneous and restricted view of the Volunteer Act and (2) at the time of his termination, plaintiff was engaged in an activity that is protected under the common law. We reject both arguments in turn.

¶ 13          Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). "[S]ummary judgment is not appropriate: (1) if 'there is a dispute as to a material fact' (*Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998)), (2) if 'reasonable persons could draw divergent inferences from the undisputed material facts' (*id*.), or (3) if 'reasonable persons could differ on the weight to be given the relevant factors' of a legal standard (*Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 269 (2007))." *Seymour v. Collins*, 2015 IL 118432, ¶ 42. We review issues of summary judgment *de novo*. *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL 114811, ¶ 15.

¶ 14                                   A. The Volunteer Act

¶ 15          Plaintiff argues the court erred in granting summary judgment on count I of his complaint because there was a genuine issue as to the material facts of his termination, including whether his termination violated the Volunteer Act. Plaintiff's argument requires that we determine whether he was protected from discharge by the plain language of the Volunteer Act, which is an issue of first impression.

¶ 16          Section 5(a) of the Volunteer Act states:

4

"[n]o public or private employer may terminate an employee who is a volunteer emergency worker because the employee, when acting as a volunteer emergency worker, is absent from or late to his or her employment in order to respond to an emergency prior to the time the employee is to report to his or her place of employment." 50 ILCS 748/5(a) (West 2014).

The Volunteer Act defines "[v]olunteer emergency worker" as "a firefighter who does not receive monetary compensation for his or her services to a fire department or fire protection district." 50 ILCS 748/3 (West 2014). The monetary compensation restriction does not include "monetary incentive[s]" that are awarded to a firefighter under section 6 of the Protection Act. *Id*.; see also 70 ILCS 705/6 (West 2014).

¶ 17　　　　In this case, the parties do not dispute that plaintiff was a volunteer firefighter for the District. Rather, defendant argues that section 5 protections do not apply to plaintiff because he received "monetary compensation." Plaintiff characterizes the monies he received from the District as permissible "monetary incentives." Section 6 of the Protection Act provides:

"[t]o encourage continued service with the district, the board of trustees has the express power to award monetary incentives, not to exceed $240 per year, to volunteer firefighters of the district based on the length of service. To be eligible for the incentives, the volunteer firefighters must have at least 5 years of service with the district. The amount of the incentives may not be greater than 2% of the annual levy amount when all incentive awards are combined." 70 ILCS 705/6(f) (West 2014).

From this language, plaintiff argues the classification of the funds paid to him by the District presents a question of fact for the fact finder to decide, and therefore, summary judgment is inappropriate.

¶ 18 The record establishes that the District's annual payments to plaintiff exceeded the stated maximum monetary incentive allowed by section 6(f) of the Protection Act. 70 ILCS 705/6(f) (West 2014). While the District's payments were laudable and serve the spirit of section 6 of the Protection Act, they run afoul of the section's plainly expressed limitations. Specifically, under section 6, plaintiff was entitled to receive a *maximum* of $240[2] in incentive pay after he had served a minimum of five years. *Id.* Plaintiff received substantially more than the maximum during each of his years of service. Moreover, according to plaintiff's response to defendant's interrogatories, plaintiff received these payments during each of his years of service even though he was not statutorily entitled to the payments, as he had not met the five-year minimum service requirement. *Id.* Therefore, the record clearly establishes that the monies plaintiff received from the District for attending training and responding to calls fell within the Volunteer Act's definition of monetary compensation. 50 ILCS 748/3 (West 2014). As a result of this monetary compensation, plaintiff was not statutorily protected from retaliatory discharge by section 5 of the Volunteer Act. 50 ILCS 748/3, 5 (West 2014). Because there is no dispute of material fact on count I, the court did not err in granting summary judgment.

¶ 19 B. Common Law

¶ 20 Plaintiff generically argues that the trial court's summary judgment ruling as to count II of his complaint was in error because his termination violated the public policy of protecting those who serve the broader public interest.

---

[2]On January 1, 2004, the legislature enacted the $240 monetary incentive maximum. Pub. Act 93-589 (eff. Jan. 1, 2004) (amending 70 ILCS 705/6 (West 2014)).

¶ 21    The tort of retaliatory discharge is a derivation from the common-law doctrine of "at will" employment. See *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 128 (1981). Under the common law, to state a valid claim for retaliatory discharge, "the plaintiff must allege that he was discharged in retaliation for his activities and that his discharge violates a clear mandate of public policy." *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 529 (1985). There is no exact definition of "public policy." *Palmateer*, 85 Ill. 2d at 130. Generally, "public policy concerns what is right and just and what affects the citizens of the State collectively." *Id*. The determination of public policy is a legislative function, which necessitates the balancing of political interests. *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 59. To determine the public policy of Illinois, a court must look to the constitution, statutes, and long-standing case law. *In re Estate of Feinberg*, 235 Ill. 2d 256, 265 (2009).

¶ 22    Retaliatory discharge has been found to contravene public policy where an employee was fired for refusing to violate a statute (*Tameny v. Atlantic Richfield Co.*, 610 P.2d 1330 (Cal. 1980)), evading jury duty (*Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. Ct. 1978)), engaging in statutorily protected union activities (*Glenn v. Clearman's Golden Cock Inn, Inc.*, 13 Cal. Rptr. 769 (Cal. Dist. Ct. App. 1961)), engaging in whistleblower activities (*Palmateer*, 85 Ill. 2d 124), and filing a worker's compensation claim (*Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172 (1978)). In contrast, retaliatory discharge claims have not prevailed where only private interests are at stake. *Palmateer*, 85 Ill. 2d at 131.

¶ 23    The second count of plaintiff's complaint alleged that plaintiff was "retaliated against because of his protected activity"—service to a volunteer fire department. Plaintiff's common-law claim does not specify a constitutional, statutory, or common-law basis for the public policy of protecting a volunteer firefighter's private employment. It is likely that this omission was the

7

result of the codification of these protections in the Volunteer Act. See *supra* ¶ 16. We find that this codification superseded any general common-law doctrine favoring the protection of the private employment of volunteer firefighters. Notably, plaintiff did not argue that his termination violated an alternative public policy that has been recognized at the common law. See *supra* ¶ 22. As a result, plaintiff's second claim fails because the specific form of retaliatory discharge alleged in count II sounds in the Volunteer Act and not the common law. Our ruling does not mean that the common-law tort of retaliatory discharge was extinguished by the Volunteer Act but rather that plaintiff failed to allege a separate and distinct common-law claim of retaliatory discharge. We affirm the court's grant of summary judgment for defendant.

¶ 24       In reaching our conclusion, we are sympathetic to the dissent's position that plaintiff received very little pay for his volunteer firefighting. However, the District's nominal payments to plaintiff do not provide the foundation for a common-law cause of action for retaliatory discharge. The total amount of payments plaintiff received exceeded that permitted under the Protection Act (70 ILCS 705/6(f) (West 2014)) and, therefore, divested plaintiff of the employment protections of section 5(a) of the Volunteer Act (50 ILCS 748/5(a) (West 2014)). We believe the result sought by the dissent can only be achieved by legislative modification of section 6(f)'s prescription of the maximum amount of permissible "monetary incentives." 70 ILCS 705/6(f) (West 2014). We, as a court of review, do not have the power to change or to deviate from the plain language of these statutory provisions. See *Albee v. City of Bloomington*, 365 Ill. App. 3d 526, 528 (2006) (this court is bound by the plain meaning of the statute where the statutory language is clear and unambiguous).

¶ 25                                    II. Attorney Fees

¶ 26        In his brief, plaintiff makes a generic one-paragraph argument that he is entitled to attorney fees for prosecuting this wrongful termination case. We find that there are no grounds for an award of attorney fees.

¶ 27                                 III. Motion for Sanctions

¶ 28        During the pendency of this appeal, defendant filed a motion for sanctions under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). Defendant contends plaintiff's arguments are frivolous because they are not well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. We disagree. Plaintiff makes a good-faith argument for the extension of the Volunteer Act to protect volunteer firefighters who receive significant compensation for their altruistic actions. Although plaintiff does not prevail on this argument, we find no reason to impose sanctions.

¶ 29                                      CONCLUSION

¶ 30        The judgment of the circuit court of Will County is affirmed.

¶ 31        Affirmed.

¶ 32        JUSTICE HOLDRIDGE, specially concurring.

¶ 33        I join in Justice McDade's judgment and analysis. I write separately to share my analysis, which I believe governs the plaintiff's common-law claim for retaliatory discharge. I do not believe that the codification of protections for volunteer firefighters' employment in the Volunteer Emergency Worker Job Protection Act (Volunteer Act) (50 ILCS 748/1 *et seq.* (West 2014)) "superseded" any preexisting common-law cause of action providing similar protections. See *supra* ¶ 23. Rather, I believe that no such preexisting common-law cause of action exists.

¶ 34    In order to state a common-law claim for retaliatory discharge in connection with his activities as a volunteer firefighter, the plaintiff would have to identify a "clearly mandated public policy" favoring the protection of volunteer firefighters' employment expressed in the Illinois Constitution, an Illinois statute, or a judicial decision. *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124 (1981). Neither the Illinois Constitution nor any judicial decision prescribes any such public policy. The only potential source for such a policy is the Volunteer Act, which by its plain terms applies only to firefighters earning less than $240 per year, unlike the plaintiff. 70 ILCS 705/6(f) (West 2014). Here, the plaintiff invites us to construct a common-law claim that I believe has no support (much less "clearly mandated" support) in any existing positive law. In fact, the plaintiff's claim conflicts with the only existing law in this area (the Volunteer Act) by providing a cause of action to individuals who have been expressly excluded from the ambit of that Act. In my view, it would not be appropriate to recognize any such cause of action, particularly given our supreme court's expressed reluctance to expand the tort of retaliatory discharge. See, *e.g.*, *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 467 (1999) (noting that the court "has consistently sought to restrict the common law tort of retaliatory discharge"); *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 37-38 (1994) (noting that the supreme court has "expressed its disinclination to expand the tort of retaliatory discharge"); see also *Geary v. Telular Corp.*, 341 Ill. App. 3d 694, 701 (2003).

¶ 35    In my opinion, a common-law claim for retaliatory discharge of a volunteer firefighter based on his firefighting activities may not be grounded in our constitution's general policy "favoring the effective protection of the lives and property of citizens." *Infra* ¶ 42. As our supreme court has noted, a common-law tort action for retaliatory discharge will be recognized only where the matter "strike[s] at the heart of a citizen's social rights, duties and [obligations]."

10

*Palmateer*, 85 Ill. 2d at 130. In *Palmateer*, the plaintiff was fired for exercising his right to report potential criminal activity to local law enforcement authorities and for performing his statutory duty to assist such officials when requested to do so. *Id.* at 127, 133. No such social rights, duties, and obligations are implicated here. The plaintiff's right not to be terminated from his private employment due to the performance of his duties as a volunteer firefighter does not stem from his basic rights as a citizen or from some statutory provision expressly conferring such a right. As noted above, the legislature enacted a statute on this subject but expressly limited the statute's reach to firefighters earning less than the plaintiff earned. One might well question the wisdom of that decision.

¶ 36    JUSTICE WRIGHT, concurring in part and dissenting in part.

¶ 37    I agree with the majority's analysis affirming the trial court's ruling on count I. However, I would reverse the trial court's ruling on count II.

¶ 38    In this case, plaintiff's rate of compensation was "$5.00 per" training session and "$7.50 per" fire call. The District responds to approximately 150 fire calls per year and anticipates between 36 and 48 training sessions, most often conducted on weekends. Hence, if a volunteer firefighter responded to all 48 projected weekend training exercises and answered every anticipated fire call, the dedicated volunteer firefighter would receive no more than $1365 annually from this District.

¶ 39    During the third reading of House Bill 4851, the legislation was introduced as a solution to "our problem of attracting and retaining volunteer firefighters," who serve over 75% of the communities in Illinois. 93d Ill. Gen. Assem., House Proceedings, Mar. 29, 2004, at 5 (statements of Representative Boland). It is significant to me that our lawmakers did *not* introduce this legislation at the request of private employers hoping to eliminate the tort of

11

retaliatory discharge. Rather, the legislation was introduced with the hopes it could resolve the difficulty districts were having in recruiting volunteer firefighters.

¶ 40 I respectfully point out that House Bill 4851 was described as "one small step that we can take to *reward* or protect our volunteer firefighters." (Emphasis added.) 93d Ill. Gen. Assem., House Proceedings, Mar. 29, 2004, at 19 (statements of Representative Boland). Consequently, I construe the Volunteer Act to *add* a statutory layer of job protection as a reward for a small class of emergency workers that do not receive any monetary reward from a grateful public. However, I believe the added layer of statutory job protection does not negate similar job protection, based on public policy, for those that receive nominal compensation for "time served" protecting the public in emergencies.

¶ 41 To obtain relief based on public policy prohibiting retaliatory discharge for reasons related to public service, a discharged employee must allege and prove that he or she wa*s not* serving his or her own private interests while absent from regular employment in the name of public service. *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 130-31 (1981). Consequently, the allegations of each complaint will dictate whether the discharged employee has properly stated a cause of action in tort for termination of employment for reasons that are contrary to public policy.

¶ 42 I concur with the majority's conclusion that plaintiff in this case cannot recover his job based on the statutory protection of the Volunteer Act. However, I disagree that count II of the complaint fails to state a separate and viable cause of action based in tort. Arguably, the small $5.00 and $7.50 stipends for training sessions and fire calls in this case do not begin to offset the significant risk of harm a volunteer firefighter faces or rise to the level of private gain in my opinion. The Illinois Constitution provides "[t]here is no public policy more important or more

12

fundamental than the one favoring the effective protection of the lives and property of citizens." *Id.* at 132.

¶ 43    Since there are many disputed material facts set out in the pleadings, I express no opinion regarding whether plaintiff was discharged for reasons that were contrary to current public policy related to his nominally compensated public service alone. I submit that the finder of fact should be allowed to decide whether plaintiff reported late to work because he was motivated by private gain or motivated by a sense of public duty on the morning he was terminated from his employment. The former finding would defeat recovery based on tort, and the latter would not.

¶ 44    Unlike my respected colleagues, I would reverse the trial court's decision to grant summary judgment in favor of the employer on count II, as a matter of law.

¶ 45    For the reasons set forth above, I respectfully concur in part and dissent in part.